## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY LIN, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| LIBERTY HEALTH SCIENCES INC., GEORGE SCORSIS, and RENE GULLIVER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Nancy Lin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Liberty Health Sciences Inc. ("Liberty" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Liberty common stock between June 28, 2018, and December 3, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Liberty was incorporated under the Business Corporations Act (British Columbia) on November 9, 2011 as SecureCom Mobile Inc.  The Company's headquarters are located at 35 McCaul Street, Suite 201, Toronto, Ontario, Canada and its registered office is located at Suite 2300, 550 Burrard Street, Vancouver, British Columbia, Canada.  The Company's principal business activity is the production and distribution of medical cannabis through its wholly-owned subsidiary DFMMJ LLC (d/b/a Liberty Health Sciences Florida Ltd.).

3.       Private Investor Michael Serruya ("Serruya") is a founding board member and a large investor of Liberty.  When Liberty went public in 2017, Serruya was listed as a director of the Company.

4.      Aphria Inc. ("Aphria"), which also produces and distributes cannabis, has had longstanding ties with Liberty, starting from the very beginning of both companies. When Aphria was founded in 2014, Victor Neufeld ("Neufeld") joined the firm as CEO and co-founder.  One of Aphria's other early institutional backers included The Delavaco Group, Front St. Capital, York Plains, and Broadband Capital of NYC.

5.      Neufeld became the Chairman of Liberty while Cole Cacciavillani, Aphria's chief agronomist and co-founder, also became one of the executives at Liberty.  Liberty was heavily

influenced by Aphria and individuals involved in the management of Aphria. Neufeld and the Serruya are large shareholders in both companies.

6.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Liberty, in conjunction with Aphria, was involved in a scheme whereby numerous fraudulent acquisitions and transactions were made to provide undue benefits to both companies' insiders; and (ii) as a result, Liberty's public statements were materially false and misleading at all relevant times.

7.     In September 2018, Aphria announced that it had sold off its stake in Liberty. On December 3, 2018, Quintessential Capital Management and Hindenburg Research issued a report entitled "Aphria: A Shell Game with a Cannabis Business on the Side," claiming that Aphria was part of a scheme involving the acquisition of shell companies at artificially inflated prices. Specifically, the report alleged: "Aphria is part of a scheme orchestrated by a network of insiders to divert funds away from shareholders into their own pockets." The article detailed a thorough and on-the-ground investigation into Aphria's latest investments that revealed the poor quality and worth of the assets of those investments. For example, the article was accompanied by pictures showing that Aphria's latest investment in Jamaica was an abandoned building on dilapidated property.

8.     On this news, Liberty's stock fell $0.36, or nearly 34%, over the next two trading days to close at $0.70 on December 4, 2018.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

12.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1391(b).  Liberty securities are traded on OTC Markets ("OTC"), located within this Judicial District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Liberty securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Liberty is a Canadian corporation with its principal executive offices located at 35 McCaul Street, Suite 201, Toronto, Ontario, Canada.  Liberty's common stock trades in an efficient market on OTC under the ticker symbol "LHSIF."

16.    Defendant George Scorsis was at all relevant times the Chief Executive Officer of Liberty.

17.    Defendant Rene Gulliver was at all relevant times the Chief Financial Officer of Liberty.

18.    The Defendants referenced above in ¶¶ 16-17 are sometimes referred to herein collectively as the "Individual Defendants."

19.    The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS
### Background

20.    Liberty was incorporated under the Business Corporations Act (British Columbia) on November 9, 2011 as SecureCom Mobile Inc.  The head office of the Company is located at 35 McCaul Street, Suite 201, Toronto, Ontario, Canada and its registered office is located at Suite 2300, 550 Burrard Street, Vancouver, British Columbia, Canada.  The Company's principal business activity is the production and distribution of medical cannabis through its wholly-owned subsidiary DFMMJ LLC (d/b/a Liberty Health Sciences Florida Ltd.).

21.    The private investor Serruya is a founding board member and a large investor of Liberty.  When Liberty went public in 2017, Serruya was listed as a director of the Company.

22.    Aphria, which also produces and distributes cannabis, has had longstanding ties with Liberty, starting from the very beginning of both companies.  When Aphria was founded in 2014, Neufeld joined the firm as CEO and co-founder.  One of Aphria's other early institutional backers included The Delavaco Group, Front St. Capital, York Plains, and Broadband Capital of NYC.

23.    Neufeld became the Chairman of Liberty while Cole Cacciavillani, Aphria's chief agronomist and co-founder, also became one of the executives at Liberty.

24.    Neufeld and the Serruya family are large shareholders in both companies.

**Materially False and Misleading Statements Issued During the Class Period**

25.    The Class Period begins on June 28, 2018, when Liberty released its Annual Information Form (the "2018 AIF"), Consolidated Annual Financial Statements (the "2018 CAFS"), and Management's Discussion & Analysis (the "2018 MD&A") for the fiscal year and period ended February 28, 2018 (together, the "2018 Annual Filings").  For 2018, Liberty reported a net income of

26.    Liberty's 2018 AIF discusses at length its relationship with Aphria, and Aphria's various privileges with respect to Liberty's business.   Under the 2018 AIF's heading "Relationship with Aphria," Liberty lists a total of four agreements with which it is bound to Aphira, including:  (i) a Know-How License Agreement; (ii) a Trademark License Agreement; (iii) an Investor Rights Agreement; and (iv) a Registration Rights Agreement.   Particularly relevant here are the Investor Rights Agreement and Registration Rights Agreement, which provide information concerning Aphria's privileges with regards to Liberty's securities and management.

27.    With respect to the Investor Rights Agreement, the 2018 AIF states the following:

Concurrently with the completion of the Business Combination, Liberty entered into an investor rights agreement (the "**Investor Rights Agreement**") pursuant to which, among other things, Aphria is be entitled to certain director nomination and pre-emptive rights. In particular, Aphria has the right to designate two director nominees for election to the Board for so long as Aphria beneficially owns, directly or indirectly, in the aggregate, 10% or more of the issued and outstanding Common Shares (on a non-diluted basis). Such nomination rights will terminate in the event that Aphria's ownership interest in the Company falls below 10%.

The Investor Rights Agreement also includes customary pre-emptive rights in favour of Aphria pursuant to which in the event of a proposed distribution or issuance of Common Shares or other securities convertible or exchangeable into Common Shares (other than stock options or other securities issued under security based compensation arrangements), the Company will grant Aphria the right to subscribe for that number of Common Shares, or, as the case may be, for securities convertible or exchangeable into Common Shares, on the same terms and conditions, including the same subscription or exercise price, as applicable, in order that Aphria may continue to maintain its pro rata equity ownership interest in the Company.

28.    With respect to the Registration Rights Agreement, the 2018 AIF states the following:

Concurrently with the completion of the Business Combination, Liberty entered into a registration rights agreement (the "**Registration Rights Agreement**") pursuant to which, among other things, Aphria will be provided with customary demand and "piggy back" registration rights, as further described below.

Under the terms of the Registration Rights Agreement, Aphria may at any time and from time to time (but in no event more than 3 times per calendar year), require the Company to file a prospectus under applicable securities laws and take such other steps as may be necessary to facilitate a secondary offering in Canada of all or any portion of the Common Shares held by Aphria, by giving written notice of such request to the Company. Subject to certain conditions set out in the Registration Rights Agreement, the Company shall use commercially reasonable efforts to as expeditiously as possible, but in any event no more than 60 days after the Company's receipt of such notice, prepare and file a preliminary Prospectus under applicable securities laws and promptly thereafter take such other steps as may be necessary in order to effect the distribution in Canada of all or any portion of the Common Shares held by Aphria as may be requested.

Additionally, if at any time and from time to time from and after the Effective Date, the Company proposes to make a distribution for its own account, the Company will, at that time, promptly provide Aphria with notice of such proposed distribution. Upon the written request of Aphria to the Company that Aphria wishes

to include a specified number of its Common Shares in the distribution, the Company will cause such Common Shares held by Aphria to be included in the distribution.

29.     The 2018 AIF also discusses Liberty's relationship with the Serruya family, which holds a large stake in both Liberty and Aphria.  Under the heading "Sale of Aphria's Position," the 2018 AIF states the following:

> On February 5, 2018, it was announced that ***a group of buyers led by members of the Serruya family had entered into a purchase and sale agreement with Aphria to purchase all of the Common Shares in the Company owned by Aphria that are not subject to CSE escrow requirements over the course of the next two and a half years***. Following the initial purchase, Aphria retained an ownership position of 26.4% of the issued and outstanding Common Shares. The transaction also includes a call / put option agreement for the remainder of the Common Shares in the Company owned by Aphria, which are currently subject to the CSE mandatory escrow requirements. The Company will continue to utilize the Aphria brand name and the Aphria know-how in perpetuity pursuant to the Trademark License and Know-How License between the Company and Aphria. (emphasis added)

30.     The 2018 AIF also contained merely generic, boilerplate representations with regards to the Company's compliance risks, stating, in relevant part:

> The Company's business requires compliance with many laws and regulations. Failure to comply with these laws and regulations could subject the Company to regulatory or agency proceedings or investigations and could also lead to damage awards, fines and penalties. Liberty may become involved in a number of government or agency proceedings, investigations and audits. The outcome of any regulatory or agency proceedings, investigations, audits, and other contingencies could harm the Company's reputation, require the Company to take, or refrain from taking, actions that could harm its operations or require Liberty to pay substantial amounts of money, harming its financial condition. There can be no assurance that any pending or future regulatory or agency proceedings, investigations and audits will not result in substantial costs or a diversion of management's attention and resources or have a material adverse impact on the Company's business, financial condition and results of operation.

31.     The 2018 CAFS reports Liberty subsidiaries' interests in certain Aphria subsidiaries.  The 2018 CAFS provides, *inter alia*, that Liberty Health Sciences Ohio LLC II

owns a 50.1% interest in Schottstein Aphria II LLC JV, and that Liberty Health Sciences Ohio

LLC III owns a 50.1% interest in Schottstein Aphria III LLC JV.

32.    The 2018 MD&A provides examples detailing Liberty and Aphria's commingling

interests in acquiring other businesses.  Under the section titled "Acquisition of Copperstate," the

2018 MD&A states, in relevant part:

> In February 2018, the Company entered into a definitive agreement with Aphria Inc. ("Aphria") to acquire Aphria's minority interests in Copperstate Farms, LLC and Copperstate Farms Investors, LLC (collectively, "Copperstate"), through a purchase of Aphria's wholly-owned subsidiary, Aphria (Arizona) Inc., for a purchase price of $20.0 million.

33.    The 2018 MD&A reiterated much of this information elsewhere, in relevant part:

> On February 2, 2018, the Company announced that it had entered into a definitive agreement with Aphria to purchase Aphria's wholly-owned subsidiary Aphria (Arizona) Inc. and its sole holdings being approximately 3.6% membership interest in Copperstate and an 11.8% membership interest in CSF, the parent company of Copperstate, for an aggregate purchase price of $20.0 million. Copperstate is a licensed producer and distributor of medical cannabis under the Arizona Act.

34.    Under the section titled "Product Offerings," the 2018 MD&A states, in relevant

part:

> The Company . . . announced in May 2018 that an amended licensing agreement was signed with Aphria to add Solei Sungrown Cannabis to the Company's growing list of brands in both the states of Florida and Massachusetts.

35.    The 2018 MD&A reiterated much of this information elsewhere, in relevant part:

> On June 4, 2018, the State of Ohio Board of Pharmacy awarded a dispensary license for the southwest portion of the state to Schottenstein Aphria III LLC, of which Liberty holds a 50.1% ownership interest.  Over 375 applications were submitted for 56 licenses in Ohio.  The Company is developing plans to open a dispensary over the next several months, targeting operation by the end of calendar 2018.

36.    The 2018 MD&A, like the 2018 AIF, also discusses the four agreements with

Aphria agreements that Liberty is subject to.  With respect to the Investor Rights Agreement, the

2018 MD&A states the following:

Concurrently with the completion of the Business Combination, Liberty entered into an investor rights agreement (the "Investor Rights Agreement") pursuant to which, among other things, Aphria is be entitled to certain director nomination and pre-emptive rights. In particular, Aphria has the right to designate two director nominees for election to the Board for so long as Aphria beneficially owns, directly or indirectly, in the aggregate, 10% or more of the issued and outstanding Common Shares (on a non-diluted basis). Such nomination rights will terminate in the event that Aphria's ownership interest in the Company falls below 10%.

The Investor Rights Agreement also includes customary pre-emptive rights in favour of Aphria pursuant to which in the event of a proposed distribution or issuance of Common Shares or other securities convertible or exchangeable into Common Shares (other than stock options or other securities issued under security based compensation arrangements), the Company will grant Aphria the right to subscribe for that number of Common Shares, or, as the case may be, for securities convertible or exchangeable into Common Shares, on the same terms and conditions, including the same subscription or exercise price, as applicable, in order that Aphria may continue to maintain its pro rata equity ownership interest in the Company.

37.     With respect to the Registration Rights Agreement, the 2018 MD&A states the following:

Concurrently with the completion of the Business Combination, Liberty entered into a registration rights agreement (the "Registration Rights Agreement") pursuant to which, among other things, Aphria will be provided with customary demand and "piggy back" registration rights, as further described below.

Under the terms of the Registration Rights Agreement, Aphria may at any time and from time to time (but in no event more than 3 times per calendar year), require the Company to file a prospectus under applicable securities laws and take such other steps as may be necessary to facilitate a secondary offering in Canada of all or any portion of the Common Shares held by Aphria, by giving written notice of such request to the Company. Subject to certain conditions set out in the Registration Rights Agreement, the Company shall use commercially reasonable efforts to as expeditiously as possible, but in any event no more than 60 days after the Company's receipt of such notice, prepare and file a preliminary Prospectus under applicable securities laws and promptly thereafter take such other steps as may be necessary in order to effect the distribution in Canada of all or any portion of the Common Shares held by Aphria as may be requested.

Additionally, if at any time and from time to time from and after the Effective Date, the Company proposes to make a distribution for its own account, the Company will, at that time, promptly provide Aphria with notice of such proposed distribution. Upon the written request of Aphria to the Company that Aphria wishes

to include a specified number of its Common Shares in the distribution, the Company will cause such Common Shares held by Aphria to be included in the distribution.

38.    The 2018 MD&A also contained merely generic, boilerplate representations with regards to the Company's compliance risks, stating, in relevant part:

> The Company's business requires compliance with many laws and regulations. Failure to comply with these laws and regulations could subject the Company to regulatory or agency proceedings or investigations and could also lead to damage awards, fines and penalties. Liberty may become involved in a number of government or agency proceedings, investigations and audits. The outcome of any regulatory or agency proceedings, investigations, audits, and other contingencies could harm the Company's reputation, require the Company to take, or refrain from taking, actions that could harm its operations or require Liberty to pay substantial amounts of money, harming its financial condition. There can be no assurance that any pending or future regulatory or agency proceedings, investigations and audits will not result in substantial costs or a diversion of management's attention and resources or have a material adverse impact on the Company's business, financial condition and results of operation.

39.    The statements referenced in ¶¶ 27-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company, in conjunction with Aphria, was involved in a scheme whereby numerous fraudulent acquisitions and transactions were made to provide undue benefits to both companies' insiders; and (ii) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

40.    In September 2018, Aphria announced that it had sold off its stake in Liberty.  On December 3, 2018, Quintessential Capital Management and Hindenburg Research issued a report entitled "Aphria: A Shell Game with a Cannabis Business on the Side," alleging that Aphria was

part of a scheme involving the acquisition of shell companies at artificially inflated prices. Specifically, the report alleged: "Aphria is part of a scheme orchestrated by a network of insiders to divert funds away from shareholders into their own pockets." The article detailed a thorough and on-the-ground investigation into Aphria's latest investments that revealed the poor quality and worth of the assets of those investments. For example, the article was accompanied by pictures showing that Aphria's latest investment in Jamaica was an abandoned building on dilapidated property.

41.    On this news, Liberty's stock fell $0.36, or nearly 34%, over the next two trading days to close at $0.70 on December 4, 2018.

42.    On December 6, 2018, following a second report released by Hindenburg Research, news outlets had already begun reporting on Liberty's likely connection to Aphria's alleged illicit dealings. For example, a *Windsor Star* article titled "Leamington's Aphria Faces New Allegations of 'Self-dealing'" as updated on December 6, 2018, stated, in relevant part:

> "Our examination of Aphria led to another Aphria-backed company, Liberty Health Sciences, where we uncovered multiple irregularities that raise more questions around believed undisclosed insider self-dealing," Hindenburg alleged Thursday.
>
> * * *
>
> Hindenburg claims Liberty acquired a Florida property this year. But rather than just buying the assets, Hindenburg said, they were acquired through a newly-formed entity, netting the shell holders an estimated C$5 million gain in 6 days."
>
> Hindenburg also claims that holders of that shell included key Aphria, Scythian, and Liberty deal partner/insider Andy DeFrancesco, along with three other people alleged by the Securities Exchange Commission to have run "multiple pump & dump schemes."
>
> "Yet again, this transaction took place under the oversight of Vic Neufeld as Chairman of Liberty," Hindenburg writes in its report.

The forensic analysis firm alleges that "unnamed individuals bought 242 million shares of Liberty in a highly dilutive $0.001 private placement," just days after Aphria announced its plan to buy its shares at 208 times the price.

"Based on Canadian Securities Exchange records we believe Aphria/Liberty Chairman Vic Neufeld participated in this discount round, along with Andy DeFrancesco," Hindenburg alleges.

43.    On this news, Liberty's stock fell approximately $0.05 per share, or 7.09%, to close at $0.66 per share on December 7, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Liberty securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Liberty securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Liberty or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Liberty;

- whether the Individual Defendants caused Liberty to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Liberty securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Liberty  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Liberty securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

53.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

54.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Liberty securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Liberty securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Liberty securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Liberty finances and business prospects.

57.     By virtue of their positions at Liberty , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Liberty, the Individual Defendants had knowledge of the details of Liberty internal affairs.

59.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Liberty.  As officers and/or directors of a publicly-held Company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Liberty businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Liberty securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Liberty business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Liberty securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.    During the Class Period, Liberty securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Liberty securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Liberty securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Liberty securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

63.    Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.     During the Class Period, the Individual Defendants participated in the operation and management of Liberty, and conducted and participated, directly and indirectly, in the conduct of Liberty business affairs.  Because of their senior positions, they knew the adverse non-public information about Liberty misstatement of income and expenses and false financial statements.

65.     As officers and/or directors of a publicly owned Company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Liberty financial condition and results of operations, and to correct promptly any public statements issued by Liberty which had become materially false or misleading.

66.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Liberty disseminated in the marketplace during the Class Period concerning Liberty results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Liberty to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Liberty within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Liberty securities.

67.     Each of the Individual Defendants, therefore, acted as a controlling person of Liberty.  By reason of their senior management positions and/or being directors of Liberty, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Liberty to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Liberty and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Liberty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated:  January 7, 2019                              Respectfully submitted,



                                                     **POMERANTZ LLP**

                                                     */s/ Jeremy A. Lieberman*
                                                     Jeremy A. Lieberman
                                                     J. Alexander Hood II
                                                     Jonathan Lindenfeld
                                                     600 Third Avenue, 20th Floor
                                                     New York, New York 10016
                                                     Telephone: (212) 661-1100
                                                     Facsimile: (212) 661-8665
                                                     Email: jalieberman@pomlaw.com
                                                     ahood@pomlaw.com
                                                     jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**Submission Date**

2018-12-12 00:06:14

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.   I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Liberty Health Sciences Inc. ("Liberty" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Liberty securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Liberty securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Liberty securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Wen wen nancy  Lin

## Acquisitions

## Sales

## Documents & Message

**Signature**



**Full Name**

Wen wen nancy  Lin



**Liberty Health Sciences Inc. (LHSIF)**                                            **Lin, Nancy**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| **Account 1** | | | |
| 10/2/2018 | Purchase | 10,000 | $1.2200 |
| 10/2/2018 | Purchase | 20,000 | $1.2200 |
| 10/2/2018 | Purchase | 3,000 | $1.1900 |
| 10/2/2018 | Purchase | 3,000 | $1.1800 |
| 10/3/2018 | Purchase | 1,300 | $1.1100 |
| 10/3/2018 | Purchase | 1,800 | $1.1100 |
| 10/3/2018 | Purchase | 1,600 | $1.1000 |
| 10/4/2018 | Purchase | 1,300 | $1.0900 |
| 10/4/2018 | Purchase | 1,100 | $1.0800 |
| 10/4/2018 | Purchase | 2,000 | $1.0800 |
| 10/4/2018 | Purchase | 3,000 | $1.0800 |
| 10/9/2018 | Purchase | 4,600 | $1.0300 |
| 10/9/2018 | Purchase | 1,870 | $1.0400 |
| 10/9/2018 | Purchase | 1,030 | $1.0400 |
| 10/9/2018 | Purchase | 2,500 | $1.0400 |
| 10/11/2018 | Purchase | 1,425 | $0.9700 |
| 10/11/2018 | Purchase | 3,575 | $0.9700 |
| 10/22/2018 | Purchase | 5,000 | $0.9900 |
| 10/22/2018 | Purchase | 5,100 | $0.9500 |
| 10/22/2018 | Purchase | 2,000 | $0.9500 |
| 10/22/2018 | Purchase | 800 | $0.9500 |
| 10/22/2018 | Purchase | 100 | $0.9500 |
| 10/22/2018 | Purchase | 6,000 | $0.9250 |
| 10/22/2018 | Purchase | 500 | $0.9200 |
| 10/22/2018 | Purchase | 1,500 | $0.9200 |
| 10/23/2018 | Purchase | 1,000 | $0.8190 |
| 10/23/2018 | Purchase | 1,400 | $0.8190 |
| 10/23/2018 | Purchase | 5,000 | $0.8190 |
| 10/23/2018 | Purchase | 900 | $0.8190 |
| 10/23/2018 | Purchase | 1,500 | $0.8190 |
| 10/23/2018 | Purchase | 200 | $0.8190 |
| 10/29/2018 | Purchase | 1,000 | $0.8310 |
| 10/29/2018 | Purchase | 300 | $0.8310 |
| 10/29/2018 | Purchase | 240 | $0.8310 |
| 10/29/2018 | Purchase | 347 | $0.8310 |
| 10/29/2018 | Purchase | 1,590 | $0.8310 |
| 10/29/2018 | Purchase | 1,523 | $0.8310 |
| 11/8/2018 | Purchase | 10,000 | $1.1500 |
| 11/8/2018 | Purchase | 1,500 | $1.1400 |
| 11/8/2018 | Purchase | 7,700 | $1.1400 |
| 11/8/2018 | Purchase | 800 | $1.1400 |
| 11/8/2018 | Purchase | 625 | $1.1300 |
| 11/8/2018 | Purchase | 1,375 | $1.1300 |
| 11/9/2018 | Purchase | 500 | $1.0700 |
| 11/9/2018 | Purchase | 2,950 | $1.0700 |
| 11/9/2018 | Purchase | 1,175 | $1.0700 |
| 11/9/2018 | Purchase | 375 | $1.0700 |
| 10/5/2018 | Sale | 1,000 | $1.1000 |
| 10/5/2018 | Sale | 2,000 | $1.1000 |

**Liberty Health Sciences Inc. (LHSIF)**                                                                          **Lin, Nancy**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 10/10/2018 | Sale | 10,400 | $1.0200 |
| 10/10/2018 | Sale | 1,630 | $1.0200 |
| 10/10/2018 | Sale | 2,970 | $1.0200 |
| 10/18/2018 | Sale | 5,000 | $1.1500 |
| 10/24/2018 | Sale | 4,400 | $1.0000 |
| 10/24/2018 | Sale | 200 | $1.0000 |
| 10/24/2018 | Sale | 400 | $1.0000 |
| 10/25/2018 | Sale | 100 | $0.9400 |
| 10/25/2018 | Sale | 357 | $0.9400 |
| 10/25/2018 | Sale | 1,543 | $0.9400 |
| 10/25/2018 | Sale | 3,000 | $0.9400 |
| 10/31/2018 | Sale | 5,000 | $0.9300 |
| 10/31/2018 | Sale | 150 | $0.9700 |
| 10/31/2018 | Sale | 430 | $0.9700 |
| 10/31/2018 | Sale | 520 | $0.9750 |
| 10/31/2018 | Sale | 1,000 | $0.9900 |
| 10/31/2018 | Sale | 7,219 | $0.9800 |
| 10/31/2018 | Sale | 1,781 | $0.9800 |
| 11/2/2018 | Sale | 200 | $1.0400 |
| 11/5/2018 | Sale | 9,800 | $1.1100 |
| 11/28/2018 | Sale | 100 | $1.0900 |
| 11/28/2018 | Sale | 1,800 | $1.0900 |
| 11/28/2018 | Sale | 2,645 | $1.0900 |
| 11/28/2018 | Sale | 455 | $1.0900 |
| **Account 2** | | | |
| 10/2/2018 | Purchase | 1,300 | $1.1600 |
| 10/2/2018 | Purchase | 28,000 | $1.2100 |
| **Account 3** | | | |
| 10/2/2018 | Purchase | 1,500 | $1.1700 |
| 10/10/2018 | Purchase | 40,000 | $0.9899 |
| 11/14/2018 | Purchase | 10,000 | $1.0000 |
| 11/20/2018 | Purchase | 3,000 | $0.9850 |
| 11/27/2018 | Purchase | 4,500 | $1.0292 |
| 11/26/2018 | Sale | 4,674 | $1.1000 |