**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NANCY LIN, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>   v.<br><br>LIBERTY HEALTH SCIENCES INC., GEORGE SCORSIS, RENE GULLIVER, and VIC NEUFELD<br><br>            Defendants. | Case No. 1:19-cv-00161<br><br><br>**<u>CLASS ACTION</u>** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

**POMERANTZ LLP**
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
cdavid@pomlaw.com

*Lead Counsel and [Proposed] Class Counsel for Plaintiffs*

*Additional counsel set forth on last page*

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF THE LITIGATION AND SETTLEMENT............................................ 3

        A.      Procedural History of the Litigation ........................................................ 3

        B.      Settlement Discussions ............................................................................ 4

                1.      Relief to Settlement Class Members........................................... 4

                2.      Class Notice and Settlement Administration ............................... 4

                        a)      Notice.................................................................................. 4

                        b)      Administration .................................................................. 5

                        c)      Costs of Notice and Administration................................. 5

                3.      Opt-Out/Objection Provisions .................................................... 6

                4.      Release Provisions ...................................................................... 6

                5.      Attorneys' Fees and Expenses .................................................... 7

                6.      No Admission of Liability ........................................................... 7

III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE.................................................................................................... 7

        A.      The Settlement Should Be Preliminarily Approved Because It Falls Within the
                Range of Reasonableness.......................................................................... 7

        B.      The Settlement Negotiated by the Parties Enjoys a Presumption of Fairness ........ 9

        C.      The Settlement Benefit Falls Within the Range of Possible Approval................. 10

                1.      The Complexity, Expense, and Likely Duration of the Litigation ........... 11

                2.      Stage of Proceedings.................................................................. 12

                3.      The Risks of Establishing Liability and Damages................................... 12

                4.      The Risks of Maintaining the Class Action Through Trial....................... 13

                5.      Reasonableness of the Settlement Fund.................................................... 14

IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
SETTLEMENT PURPOSES ........................................................................... 14

    A.    The Proposed Settlement Class Meets the Requirements of Rules 23(a) and
23(b)(3) ................................................................................................ 14

        1.    The Settlement Class Satisfies the Requirements of Rule 23(a)............... 15

        2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)......... 17

    B.    Nationwide Class Certification Is Appropriate for Settlement Purposes.............. 18

    C.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class... 18

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
CLASS NOTICE ........................................................................................ 19

    A.    Notice by Direct Mail and Publication Is Appropriate ......................................... 19

    B.    The Proposed Form of Notice Adequately Informs Settlement Class Members of
Their Rights in This Litigation .............................................................. 20

VI.    PROPOSED SCHEDULE OF EVENTS....................................................... 22

VII.    CONCLUSION.............................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................15

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) .......................................................................................16

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981).................................................................................................................8

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco
  Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2007)...............................................................................................15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberger v.
  Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).......................................................9, 10, 11, 14

*Clark v. Ecolab Inc.*,
  2010 U.S. Dist. LEXIS 47036  (S.D.N.Y. May 11, 2010)............................................................9

*Diaz v. E. Locating Serv. Inc.*,
  No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) .........................9

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014)....................................................................................................11, 12

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...............................................................................10, 12

*In re China Sunergy Sec. Litig.*,
  No. 07 Civ. 78595 (DAN), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13,
  2011) ......................................................................................................................................2

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27,
  2007) ......................................................................................................................................8

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
  574 F.3d 29 (2d Cir. 2009)..................................................................................................17

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. Jan 29. 2010)...........................................................................20

*In re Mego Fin Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................................14

*In re Merrill Lynch & Co., Inc. Rsch Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Feb. 1,
2007) .........................................................................................................................3

*In re Oxford Health Plans, Inc.*,
191 F.R.D. 369 (S.D.N.Y. 2000) .............................................................................16

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd sub nom. In re Prudential Sec. Inc.
Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996) .........................................................20

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................14

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................................16

*In re Salomon Analyst Metromedia Litig.*,
544 F.3d 474 (2d Cir. 2008).............................................................................17, 18

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y.2007) ................................................................................16

*Menkes v. Stolt-Nielsen S.A.*,
270 F.R.D. 80 (D. Conn. 2010)........................................................................15, 18

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)..................................................................................................19

*Palacio v. E\*TRADE Fin. Corp.*,
No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019 (S.D.N.Y.
June 22, 2012)........................................................................................................8, 9

*Soberal-Perez v. Heckler*,
717 F.2d 36 (2d Cir. 1983)........................................................................................19

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848 (S.D.N.Y. June 7,
2005) .........................................................................................................................8

*Thompson v. Metro. Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).........................................................................................9

iv

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................15

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................8

**Statutes**

15 U.S.C. § 78, *et seq*............................................................................... *passim*

**Rules**

17 C.R.F. § 240.10b-5 ...............................................................................................3

Fed. R. Civ. P. 23 ............................................................................... *passim*

**Other Authorities**

Cornerstone Research, "Securities Class Action Settlements — 2016 Review and
    Analysis.......................................................................................................................2

*Manual for Complex Litigation* (Fourth) ........................................................8, 11, 15, 19

*Newberg on Class Actions* (Fourth)................................................................8, 9, 20

Lead Plaintiff Nancy Lin and Plaintiff Gilbert Lee Silverbird (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, respectfully submit this memorandum in support of Plaintiffs' unopposed motion seeking: (i) Preliminary Approval of the Proposed Settlement (the "Settlement"); (ii) conditional certification of the Settlement Class; (iii) approval of the Notice to the Settlement Class; and (iv) a date for a Settlement Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Lead Plaintiffs' motion for Final Approval of the Settlement, and the filing of Lead Counsel's application for attorneys' fees and expenses.[1]

## I.    INTRODUCTION

As the Court is well aware, to consummate a class settlement, Lead Plaintiffs must: (a) mail court-ordered notice to the class while simultaneously publishing a summary notice; and (b) solicit objections, exclusions, or claims.  With the responses of Settlement Class Members in hand, the Court must then hold a hearing to determine whether the Settlement is fair, reasonable, and adequate such that it should be formally approved.  Plaintiffs and defendants Liberty Health Sciences, Inc. ("Liberty"), Rene Gulliver, Vic Neufeld, and George Scorsis (collectively, "Defendants," with Plaintiffs, the "Parties") have agreed to settle this case for one million eight hundred thousand dollars (US$1,800,000.00).  By this motion, Plaintiffs seek to begin the settlement approval process, through an order:

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation").  A true and correct copy of the Stipulation and its exhibits (Exhibits A, A-1, A-2, A-3 and B) are altogether attached as Exhibit 1 to the accompanying Declaration of Cara David in Support of Preliminary Approval of Class Action Settlement ("David Decl.").

1

- Granting preliminary approval of the Settlement, the terms of which are set forth in the Stipulation, which the Court should order because the Settlement Amount of $1.8 million "falls within the range of possible approval";

- Certifying a class for settlement purposes only, appointing Plaintiffs as the Class Representatives, and appointing Pomerantz LLP ("Pomerantz") as Class Counsel, which the Court should order because the prerequisites of Fed. R. Civ. P. 23 are met;

- Approving the Parties' proposed form and method of giving Settlement Class Members notice of the action and proposed Settlement, which the Court should order because the Notice and the plan to provide notice meet all applicable requirements;

- Setting a hearing on whether the Court should grant final approval of the Settlement, dismiss claims against the Defendants and approve the release of claims against all Releasee(s), enter judgment, and award attorneys' fees and expenses to Lead Counsel.

*See* David Decl., Exhibit A-1 (Proposed Preliminary Approval Order).

The Settlement is an excellent result for Settlement Class members. Plaintiffs estimate that the Settlement returns almost 8.4% of estimated damages using the low end of damages models – above settlements for similar securities class actions. *See* Cornerstone Research, "Securities Class Action Settlements — 2016 Review and Analysis," at 7-8 (median recovery in all securities class actions from 2007 to 2016 was approximately 1.8%-2.9% of estimated damages, and the median recovery in securities class actions with estimated damages of less than $50 million was 10.8% of estimated damages between 2006 and 2015 and 7.3% in 2015); *see also In re China Sunergy Sec. Litig.*, No. 07 Civ. 78595 (DAN), 2011 U.S. Dist. LEXIS 53007, at \*15 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of

the class members' estimated losses") (internal quotation marks omitted); *In re Merrill Lynch & Co., Inc. Rsch Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History of the Litigation

An initial complaint was filed by Nancy Lin on January 7, 2019.  (ECF No. 1.)  Nancy Lin filed a motion to be appointed Lead Plaintiff on March 8, 2019.  (ECF No. 7.)  The Court issued an order appointing her Lead Plaintiff on July 17, 2019.  (ECF No. 18.)  Lead Plaintiff filed an amended complaint on September 19, 2019 against Defendants.  (ECF No. 25.)

Lead Plaintiff and Plaintiff Gilbert Lee Silverbird filed a Second Amended Complaint on January 21, 2020 (the "Complaint," ECF No. 48) asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Rene Gulliver, Vic Neufeld, and George Scorsis (the "Individual Defendants") under Section 20(a) of the Exchange Act.  The Complaint alleged that Liberty and the Individual Defendants made misrepresentations and/or omissions of material fact in public statements to the investing public concerning Liberty's relationship with Aphria Inc. and its acquisition of certain property in Florida.

On April 24, 2020, three separate motions to dismiss the Complaint were filed by (i) Liberty (ECF No. 54); (ii) Rene Gulliver and George Scorsis (ECF No. 58); and (iii) Vic Neufeld (ECF No. 57).  Plaintiffs filed a single omnibus opposition to these three motions to dismiss on June 1, 2020 (ECF No. 66).  Three replies were filed in further support of the motions to dismiss on June 22, 2020 (ECF Nos. 67, 69, 70).

Oral argument was scheduled on the motions, but adjourned when the Parties informed the Court that they had reached an agreement in principle. (ECF No. 80.)

### B.    Settlement Discussions

After the motions to dismissed were fully briefed, the Parties engaged in a series of telephonic settlement conferences before an agreement was reached. The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed on November 17, 2020. The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a cash payment by or on behalf of Defendants of $1,800,000 for the benefit of the Settlement Class. The Memorandum of Understanding was formalized in a Stipulation that was executed on January 8, 2021.

### 1.    Relief to Settlement Class Members

In full and final settlement of all claims asserted in this Action, and all claims that have been or could have been asserted by Settlement Class Members or Plaintiffs against Defendants in the Action, Liberty shall pay or cause to be paid one million eight hundred thousand dollars (US$1,800,000.00) into the Settlement Fund.

### 2.    Class Notice and Settlement Administration

#### a)    Notice

Within twenty (20) business days of the entry of the Preliminary Approval Order, the third-party Claims Administrator, Strategic Claims Services ("Claims Administrator") will provide individual notice via mail, substantially in the form attached to the David Decl. as Exhibit A-1 (the "Notice"), to each Settlement Class Member identified by records maintained by Liberty or its transfer agent. Strategic Claims Services will send individual notice to all persons identified by banks, brokerage firms, or other nominees, as having purchased Liberty

4

stock on the over-the-counter market in the United States during the Settlement Class Period. Not later than fourteen (14) business days after the direct mail notice is first sent, the Claims Administrator shall publish notice of the Settlement, substantially in the form attached to the David Decl. as Exhibit A-3, over the *GlobeNewswire*.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Plaintiffs to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure for objecting to and opting out of the Settlement, the proposed Plan of Allocation and the date and place of the Settlement Hearing.  This notice program will fairly apprise Settlement Class Members of the Settlement and their options with respect thereto and fully satisfies due process requirements.

b)  **Administration**

The Claims Administrator will administer distribution of the Net Settlement Fund pursuant to the Stipulation.  In accordance with the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount to an interest-bearing escrow account in a federally-chartered bank designated by Lead Counsel (the "Escrow Account") to be controlled by said bank as the Escrow Agent for the benefit of the Settlement Class, with interest to accrue for the benefit of the Settlement Class.  Once the Settlement becomes final following entry of the final judgment, substantially in the form attached to the Stipulation as Exhibit B (the "Judgment"), no monies shall revert to Defendants.

c)  **Costs of Notice and Administration**

Upon deposit in the Escrow Account of the Settlement Consideration, the Escrow Agent may transfer two hundred fifty thousand U.S. dollars ($250,000.00) from the Escrow Account to

5

an interest-bearing account to be maintained by the Settlement Administrator to pay reasonable and necessary Notice and Administration Costs.

### 3. Opt-Out/Objection Provisions

Any Settlement Class Member who wishes to object to the fairness of the Stipulation must, no later than twenty one days before the date of the Settlement Hearing, as set forth in the Notice (*see* David Decl, Exhibit A-1), file any such objection with the Court, and provide copies of the objection to Lead Counsel, Liberty's Counsel, and the Court. Any Settlement Class Member who does not file a timely objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

Any Settlement Class Member who wishes to be excluded as a Settlement Class Member may submit a written exclusion request, postmarked no later than twenty one days before the date of the Settlement Hearing, to the Claims Administrator in addition to Lead Counsel and Liberty's Counsel.

### 4. Release Provisions

Upon the Effective Date noted in the Stipulation, Plaintiffs and each Settlement Class Member who does not timely exclude himself/herself/itself from the Settlement Class, including any other person acting on his/her/its behalf or for his/her/its benefit, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged all Released Claims (including any Unknown Claims) against the Released Persons, shall be permanently and forever enjoined from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Released Persons, and shall be deemed to permanently covenant to refrain from instituting, commencing or prosecuting, in any capacity, any and all of the Released Claims against any of the Released Persons.

6

**5.** **Attorneys' Fees and Expenses**

For their services rendered on behalf of the Settlement Class, Lead Counsel intend to seek an attorneys' fee award not to exceed 33.333% of the Settlement Amount, as well as the reimbursement of reasonable expenses.  The Defendants take no position with respect to Lead Counsel's request for attorneys' fees and expenses.

**6.** **No Admission of Liability**

Each of the Defendants denies any wrongdoing, and this Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Released Persons with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, the Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.  Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed, and prosecuted by Plaintiffs in good faith and defended by Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate and reasonable.

**III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE**

**A.    The Settlement Should Be Preliminarily Approved Because It Falls Within the Range of Reasonableness**

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and in such cases,

litigation resolution is usually significantly delayed. *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. Dist. LEXIS 88019, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *18 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class Actions* (Fourth) (2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007). More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008). The typical process for approval of class action settlements is described in the *Manual for Complex Litigation* (Fourth) §§ 21.632-.634 (2004). The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3. A formal fairness, or final approval, hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985)). In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart*, 396 F.3d 96 at 116. They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).

**B.      The Settlement Negotiated by the Parties Enjoys a Presumption of Fairness**

In evaluating the settlement, the Court should give weight to the parties' judgment that the settlement is fair and reasonable. *See Palacio*, 2012 U.S. Dist. LEXIS 88019, at *8; *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, at *10 (S.D.N.Y. Nov. 29, 2010); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010).

The Parties had multiple phone calls over the period of weeks to negotiate the Settlement. Through this adversarial process, the Parties reached an agreement in principle to settle the Action. The arm's-length nature of the settlement negotiations, supports the conclusion that the Settlement is fair and was achieved free of collusion.

In negotiating the Stipulation, Plaintiffs had the benefit of attorneys who are highly-experienced in complex litigation and familiar with the legal and factual issues of the case. *See* David Decl., Ex. 2 (Pomerantz Firm Resume). In Lead Counsel's view, the Settlement provides substantial benefits to the Settlement Class, especially when considering the expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching the agreement to settle. Plaintiffs conducted an

9

investigation prior to filing both the Amended Complaint; conducted a thorough review of publicly available information; engaged their own damages expert; and reviewed Defendants' motions to dismiss and replies in further support of those motions to dismiss.  As a result, Plaintiffs and Lead Counsel had an adequate basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.  *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### C.  The Settlement Benefit Falls Within the Range of Possible Approval

At the Settlement Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will have to decide whether to approve the settlement under the factors articulated in *Grinnell*:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances.  *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

Today, however, the Court need not determine whether the Settlement should be approved.  Rather, if the Court finds that the Settlement is "within the range of possible

approval" that might be approved under *Grinnell*, it should then order that the Settlement Class be notified of the Settlement and given an opportunity to be heard and that the Settlement Hearing be held.  *See Manual for Complex Litigation* (Fourth) § 40.42 (model preliminary approval order).  Here, the Settlement substantially satisfies the test announced by *Grinnell*. Therefore, the Court should grant preliminary approval.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

The Settlement provides the Settlement Class with substantial and certain relief, without the delay and expense of motion practice, discovery, class certification, trial, and post-trial proceedings.  Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as developing case law, including the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), a securities class action is an inherently complex and lengthy litigation to prosecute. This Action presented very complicated legal issues.  Defendants were contesting this Court's jurisdiction, whether venue was proper, whether their statements were false and/or misleading, and whether Plaintiffs sufficiently pled loss causation.  While Plaintiffs believe their claims were strong and this Court was the property court to hear them, there was a very real risk that this Court would dismiss the Action.  A dismissal based on jurisdiction or venue grounds would have been particularly destructive because it is unlikely an amendment would have bolstered Plaintiffs' claims in this regard.  Even if, and only if, Plaintiffs were successful in defeating Defendants' motion(s) to dismiss they would they proceed to discovery, class certification, summary judgment and then a trial – all of which would be expensive and risky.  The court and/or jury, depending on the proceeding, would then have had to determine: (i) whether the alleged false or misleading statements were material; (ii) whether Defendants acted with scienter;

(iii) whether Liberty's stock traded on an efficient market, entitling Plaintiffs to a presumption of reliance, but permitting Defendants' now-inevitable rebuttal evidence on price impact under *Halliburton*; and (iv) what was the artificial inflation of Liberty's stock and how much of the price declines were attributable to what Plaintiffs allege were the disclosures of information correcting the alleged false statements.

Not only would *any* recovery be more uncertain, it would inevitably be delayed by years, particularly when potential appeals are taken into consideration.

### 2.       Stage of Proceedings

In this Action, the proceedings were sufficiently advanced to provide Plaintiffs with a thorough understanding of the strengths and weaknesses of the Settlement Class's claims. Plaintiffs conducted an investigation prior to filing the Amended Complaint.  Although the Parties did not engage in discovery after Plaintiffs filed their Complaint, the Parties had the benefit of motion to dismiss briefing, which illuminated the relative strengths and weaknesses of the Parties' positions.  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### 3.       The Risks of Establishing Liability and Damages

There were substantial risks in prosecuting this Action, and further prosecution of this Action to trial may have yielded limited or no recovery.  As previously explained, Defendants were moving to dismiss the Complaint on multiple grounds.  Even if Plaintiffs could survive the motions to dismiss, Plaintiffs would have to establish falsity, materiality, and scienter to a jury's satisfaction which is notoriously difficult and risky.   Additionally, Plaintiffs would have

encountered a summary judgment motion on the elements of their claims, and if Plaintiffs defeated Defendants' motions, the risk attendant in proving their claims at trial. Among other arguments, Defendants would have argued that Plaintiffs were foreclosed from using the first alleged stock drop, a larger drop, to establish loss causation. If that first stock drop was not considered for damages purposes, the damages possible of being claimed in this Action would have been significantly reduced.

### 4.    The Risks of Maintaining the Class Action Through Trial

In deciding Plaintiffs' motion for class certification, the Settlement Class would face the risk of arguments by Defendants regarding any potential factual dissimilarity of claims asserted by Plaintiffs and putative class members. If successful, the defense would mandate individual lawsuits, hoping to collect minimal amounts of damages accrued. Moreover, even if a class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of Defendants' securities laws violations at trial.

To be entitled to class certification, Plaintiffs must show that common issues predominate over individual issues. But for Defendants' consent to certification of the Settlement Class, Plaintiffs would have had to meet their burden by showing that Liberty's stock trades on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. This is a particular risk in this Action because Liberty is traded over-the-counter in the United States and therefore is subject to different standards than a stock trading on the NASDAQ or New York Stock Exchange.

While it is not unusual for courts to certify securities class actions, it is by no means automatic. Thus, without a settlement, even assuming the evolving law does not change further, the Settlement Class risked that certification would not be granted. The law governing certification of securities class actions has been in constant flux.

**5.      Reasonableness of the Settlement Fund**

The Stipulation provides for Settlement Amount of $1.8 million to be paid into the Settlement Fund.    Plaintiffs' consultation with their expert indicated that, based on the allegations in the Complaint, estimate that the Settlement returns almost 8.4% of estimated damages using the low end of damages models.  As such, the settlement falls well within the range of possible approval.  *See*, *e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies indicating that the average securities fraud class action settlement since 1995 has resulted in a recovery of 5.5%-6.2% of estimated losses); *In re Mego Fin Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (stating that even using the objector's' damages estimates, a settlement of 14% would be fair); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

**IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

**A.      The Proposed Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)**

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which has been stipulated to by the Parties, consists of all Persons who purchased, held, or otherwise acquired the common stock of Liberty on the over-the-counter market in the United States during the Settlement Class Period (which is defined as the period between July 20, 2017 and December 6, 2018, both dates inclusive). Excluded from the Settlement Class are all named Defendants in the Litigation, the present and former officers and directors of Liberty and any subsidiary thereof, and the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons and any

14

entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 613. Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3). *Id.* at 614. In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Joinder is generally presumed to be impracticable when a putative class exceeds 40 members." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (citing *Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997)). Impracticable does not mean impossible, but only that the difficulty or inconvenience of joining all members of the class makes use of the class action appropriate. *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).

"While a precise quantification of the class is not required, some evidence or a reasonable estimate of the number of class members' [must be provided.]" *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 n.4 (E.D.N.Y. 2006) (quotations and alterations omitted). In making this determination, "the court may make some common sense assumptions and rely on reasonable inferences drawn from the available facts." *Id.* at 351 n.5. Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). With more than 341 million shares of Liberty stock outstanding at the end of the Settlement Class Period and an average daily trading volume in the U.S. of 691 thousand shares during the Settlement Class Period, individual joinder is impracticable and the numerosity requirement is clearly satisfied.

The proposed Settlement Class also meets the commonality requirement of Rule 23(a). Commonality is generally easily satisfied, as it is established so long as the plaintiffs can "identify some unifying thread among the [class] members' claims." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 84 (S.D.N.Y.2007) (quoting *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y.1989)). The requirement is met "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication." *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (internal quotation marks omitted).

Plaintiffs also meet Rule 23(a)'s typicality requirement. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Like all other Settlement Class Members, Plaintiffs directly relied or are entitled to a presumption of reliance on Defendants' alleged false and misleading statements that violated Sections 10(b) and 20(a) of the Exchange Act. There are no facts concerning Plaintiffs that render them atypical as compared to other Settlement Class Members.

Rule 23(a) lastly requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *Flag Telecom*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625). Plaintiffs adequately represent the Settlement Class as they have no individual interests or claims that are antagonistic to the Settlement Class and have zealously represented the Settlement Class's interests to date, including by monitoring the pleadings and authorizing Lead Counsel's mediation and settlement efforts.

### 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008). This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by

17

representation." *Id.* There are questions of law and fact common to the Settlement Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws and whether those violations were knowing or reckless. These common issues predominate over any individual issues.

"Together with predominance, the superiority requirement 'ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity…of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Menkes*, 270 F.R.D. at 100 (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)). Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Menkes*, 270 F.R.D. at 100.

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Settlement Class are not likely to prosecute, and many do not have an interest or means to prosecute, an individual case against Liberty, a corporation which along with its executives is represented by a top-tier, well-staffed law firm expert in the field of securities litigation. Additionally, efficiency and economy support resolving the issues in one suit before this Court now.

**B.**  **Nationwide Class Certification Is Appropriate for Settlement Purposes**

It is appropriate to settle the claims of all Settlement Class Members in one action. Settlement Class Members' claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq.*

**C.**  **The Court Should Appoint Lead Counsel as Counsel for the Settlement Class**

18

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel Pomerantz has extensive experience and a stellar reputation in class actions and securities litigation. *See* David Decl., Ex. 2. Pomerantz has been appointed as lead or co-lead counsel in many complex securities class actions, and has recovered substantial amounts of money for clients and class members. Lead Counsel will continue to commit adequate resources to ensure that the Settlement Class is properly represented in this Action as Class Counsel.

## V. THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF CLASS NOTICE

### A. Notice by Direct Mail and Publication Is Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Litigation (Fourth)* § 21.312. To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) publishing this same summary

notice in a press release, (c) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, at 145 (S.D.N.Y. Jan 29. 2010).

The proposed Notice, which will be published and also sent to Settlement Class Members by first class mail, is attached to the Stipulation as Exhibit 1 to Exhibit A. The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees award and expense reimbursement that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996) (approving proposed notice and noting that the mailing of notice to each identifiable class member's last known address is "a procedure that has been given wide-spread approval in other class actions"), *aff'd sub nom. In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3 (2d Cir. 1996). The proposed Notice, proposed Claim Form, and proposed Summary Notice (to be published over *GlobeNewswire*), are attached to the Stipulation as exhibits to Exhibit A, and should be approved by the Court.

**B.    The Proposed Form of Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation**

In an action proceeding under Rule 23(b)(3), the notice must inform each class member "that the court will exclude from the class any member who requests exclusion [by a specified date]" and "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

20

Here, the proposed Notice, attached to the Stipulation as Exhibit 1 to Exhibit A, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the Settlement. The proposed Notice provides information on, *inter alia:* the proposed Settlement Class; the terms and provisions of the Stipulation, including the Settlement Amount; the relief to the Settlement Class and the releases to Released Persons that the Settlement will provide; the maximum award of attorney's fees and reimbursement of reasonable expenses to Lead Counsel; the date, time and place of the final approval hearing; and the procedures and deadlines for opting out of the settlement or submitting comments or objections.

The Notice also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Settlement Class Members' recovery, estimating a gross average recovery of $0.019 per damaged share before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific Settlement Class Member to vary greatly across the Settlement Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case including a statement concerning the issues on which the parties disagree;

- a statement of attorney's fees or costs sought, including a summary of this information on the cover page;

- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the proposed Settlement, including the factors the Parties considered in reaching the proposed Settlement.

21

Thus, the proposed Notice to be sent to the Settlement Class provides all of the information required by the PSLRA. The Court should approve the proposed form of Notice and direct that notice be given to the Settlement Class as proposed by the parties.

## VI.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Proposed Timing |
|---|---|
| Mailing of Notice and Proof of Claim and Release (Preliminary Approval Order ¶ 8(a)) (the "Notice Date") | No later than 21 days after the entry of Preliminary Approval Order (the "Notice Date"). |
| Publication of Summary Notice (Preliminary Approval Order ¶ 8(b)) | No later than 14 calendar days after the Notice Date |
| Date to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses (Preliminary Approval Order ¶ 21) | No later than 35 calendar days prior to the Settlement Hearing. |
| Filing deadline for exclusion requests and objections (Preliminary Approval Order ¶¶ 14, 17) | Received no later than 21 calendar days prior to the Settlement Hearing. |
| Date for filing reply papers (Preliminary Approval Order ¶ 21) | Seven (7) calendar days prior to the Settlement Hearing. |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 12) | No later than 7 calendar days after the Settlement Hearing. |

## VII.   CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

Dated: January 8, 2021                                    **POMERANTZ LLP**

By: */s/ Cara David*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email:  jalieberman@pomlaw.com
cdavid@pomlaw.com

*Lead Counsel and [Proposed] Class Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ
   & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel*

23