UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY LIN, Individually and On Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>                          v.<br>LIBERTY HEALTH SCIENCES INC.,<br>GEORGE SCORSIS, RENE GULLIVER, and<br>VIC NEUFELD,<br>                                   Defendants. | Case No.  1:19-cv-00161-MKV-SLC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
<u>ALLOCATION OF SETTLEMENT PROCEEDS</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY.................................................................................. 2

III.  THE SETTLEMENT ........................................................................................... 4

IV.   THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ...... 6

      A.    The Settlement Is Presumptively and Procedurally Fair......................................... 7

      B.    The Settlement Is Substantively Fair .................................................................... 9

            1.    Litigating Securities Claims Would be Long, Complex, and Expensive . 10

            2.    The Class Reaction Supports Final Approval ........................................... 13

            3.    Plaintiffs Had Sufficient Command of the Case's Merits to Enter the
                  Settlement ................................................................................................. 14

            4.    There Are Substantial Risks of Establishing Liability and Damages ....... 15

            5.    The Risks of Maintaining Class Action Status Through Trial.................. 17

            6.    The Ability of Defendants to Withstand a Greater Judgment................... 17

            7.    The Settlement Amount is Within the Range of Reasonableness............. 18

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ......................................... 19

VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 20

VII.  NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS......... 21

VIII. CONCLUSION................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...............................................................................................12

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990)....................................................................................................12

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)....................................................................................................................6

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)...........................15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)...................................................................1, 9, 10, 15, 17, 18, 19

*City of Providence v. Aéropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................................10, 13

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .................................7

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................................................21

*Fleisher v. Phx. Life Ins. Co.*,
  No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .......................................7, 20

*George v. China Auto. Sys., Inc.*,
  11 Civ. 7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013)........................................17

*Guevoura Fund Ltd. v. Sillerman*,
  No. 1:15-cv-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .....................10, 13, 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................................10

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ................................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...............................................................................................16

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   11 Civ. 4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) ........................................ 17

*In re Advanced Battery Techs. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................... 22

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................... 11, 14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ..................................................... 13, 14, 15, 16, 17

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 14

*In re Bear Stearns*,
   909 F. Supp. 2d 259 (S.D.N.Y. Nov. 9, 2012) ........................................................ 10, 13, 14, 18

*In re China Sunergy Sec. Litig*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 19

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) .................................................................................. 9

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................. 7

*In re Flag Telecom Holdings*,
   2010 WL 4537550 (S.D.N.Y. Nov 8, 2010) ......................................................................... 18

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 (CPS), 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ................................. 11

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................... 15

*In re IMAX Secs. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ....................................................................................... 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .............................. 13

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................................. 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) ....................................................................................... 10

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................................9

*In re Paine Webber Ltd. P'ships Litig*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)................................7, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................................16

*In re Platinum & Palladium Commodities Litig.*,
   No. 10cv3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..................................................6

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ..........................................................................19

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............................14, 15

*In re Sturm, Ruger, & Co. Inc. Sec. Litig.*,
   No. 3:09cv1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012)..................................13

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809  (S.D.N.Y. Nov. 7, 2007) ........................13, 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart*, 396 F.3d 96 ......................12

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)........................................................................................6

*Lyons v. Marrud, Inc.*,
   No. 66 Civ. 415., 1972 WL 327 (S.D.N.Y. June 6, 1972)..........................................................8

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009)....................................................................................6, 8

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010)....................................................................................................3

*Pantelyat v. Bank of Am., N.A.*,
   No. 16-cv-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) .....................................14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................................12

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014)................................10

*Steginsky v. Xcelera, Inc.*,
    No. 3:12-cv-188 (SRU), 2015 WL 1036985 (D. Conn. Mar. 10, 2015).................................17

*Stinson v. City of N.Y.*,
    256 F. Supp. 3d 283 (S.D.N.Y. 2017)...................................................................................6

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................................7

*Van Oss v. N.Y.*,
    No. 10 Civ. 7524 (SAS), 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ....................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................6, 9, 13, 15, 18

*Youngers v. Virtus Inv. Partners Inc.*,
    No. 15cv8262, 2017 WL 2062986 (S.D.N.Y. May 15, 2017)..................................................17

**Statutes**

15 U.S.C. § 77z-1(a)(7)..................................................................................................21

15 U.S.C. § 78j(b) ..........................................................................................................2

15 U.S.C. § 78t(b) ..........................................................................................................3

15 U.S.C. §78u-4 ......................................................................................................10, 21

**Rules**

17 C.R.F. § 240.10b-5....................................................................................................2

Fed. R. Civ. P. 23..................................................................................................1, 21, 22

**Other Authorities**

4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45 (4th ed.
    2002) ............................................................................................................................14

Cornerstone Research, "Securities Class Action Settlements — 2019 Review and
    Analysis," (the median recovery in 10(b) cases in 2019 was 4.8% of estimated
    damages) ....................................................................................................................18

## I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"),[1] Lead Plaintiff Nancy Lin and Plaintiff Gilbert Lee Silverbird (together, "Plaintiffs"), individually and on behalf of all Settlement Class Members, present for the Court's final approval a cash settlement of one million eight hundred thousand dollars (US $1,800,000.00) resolving all claims in the above-captioned action ("Action") against Defendants, as set forth in the Stipulation of Settlement, dated January 8, 2021 (ECF No. 84-1) ("Stipulation").

The $1.8 million cash Settlement is a superb result for the Settlement Class and substantively fair under the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Plaintiffs estimate that the proposed Settlement provides the Settlement Class with almost 8.4% of likely recoverable damages[2]—above median settlements for similar securities class actions.[3]  The Settlement's merit is further demonstrated by the fact that, to date, no potential Class Members have objected to the Settlement or requested exclusion from the Settlement.  Further, the Settlement is entitled to a presumption of fairness because it resulted from arm's-length negotiations between highly experienced counsel.

The Action consisted of almost two years of litigation, wherein Lead Counsel: (a) conducted lengthy investigations reviewing and analyzing publicly available information regarding Defendants, including SEC and SEDAR filings, news articles, analyst reports, press releases, share-price movements, earnings calls, and analyst presentations; (b) carefully drafted multiple complaints, including a detailed Second Amended Class Action Complaint for

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation.

[2] This estimate is based on a calculation of damages performed by Plaintiffs' damages consultant.

[3] *See infra* Section IV.B.7.

Violations of the Federal Securities Laws (the "Complaint," ECF No. 25); (c) consulted with a damages expert to evaluate recoverable losses; (d) consulted with an investigator; (e) thoroughly researched the securities laws and intricacies of the Liberty Health Sciences, Inc. ("Liberty") business; (f) engaged in briefing related to several motions to dismiss the Complaint; (g) successfully negotiated the $1.8 million Settlement; and (h) actively supported the Settlement, including by reaching the terms of the Stipulation with Defendants, seeking the Court's approval, and overseeing the settlement-administration process.

This Settlement was agreed to as the motion to dismiss was pending. While Plaintiffs believe their claims were strong, the Action presented very complicated legal issues. Defendants were contesting this Court's jurisdiction, whether venue was proper, whether their statements were false and/or misleading, and whether Plaintiffs sufficiently pled loss causation. The entire case could have been dismissed if a Settlement was not reached.

Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.    PROCEDURAL HISTORY

An initial complaint was filed by Nancy Lin on January 7, 2019. (ECF No. 1.) Nancy Lin filed a motion to be appointed Lead Plaintiff on March 8, 2019. (ECF No. 7.) The Court issued an order appointing her Lead Plaintiff on July 17, 2019. (ECF No. 18.) Lead Plaintiff filed an amended complaint on September 19, 2019 against Defendants. (ECF No. 25.)

After a meet and confer related to Defendants' possible motions to dismissed the Amended Complaint, Lead Plaintiff and Plaintiff Gilbert Lee Silverbird filed a Second Amended Complaint on January 21, 2020 (the "Complaint," ECF No. 48). The Complaint asserts claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Rene Gulliver, Vic

Neufeld, and George Scorsis (the "Individual Defendants") under Section 20(a) of the Exchange Act.  The Complaint alleged that Liberty and the Individual Defendants made misrepresentations and/or omissions of material fact in public statements to the investing public concerning Liberty's relationship with Aphria Inc. and its acquisition of certain property in Florida.

On April 24, 2020, three separate motions to dismiss the Complaint were filed by (i) Liberty (ECF No. 54); (ii) Rene Gulliver and George Scorsis (ECF No. 58); and (iii) Vic Neufeld (ECF No. 57).  Plaintiffs filed a single omnibus opposition to these three motions to dismiss on June 1, 2020 (ECF No. 66).  Three replies were filed in further support of the motions to dismiss on June 22, 2020 (ECF Nos. 67, 69, 70).  The motions to dismiss raised many complicated issues.  Each Defendant disputed the Court's personal jurisdiction over Defendants, convenience of the forum, whether Plaintiffs sufficiently alleged a material misstatement or omission, whether Plaintiffs sufficiently alleged scienter and whether the case should be dismissed on extraterritoriality grounds under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010).

Additionally, loss causation was hotly contested.  In the Complaint, Plaintiffs alleged two corrective disclosures: (i) a short-seller report that was released on December 3, 2018 and focused on Aphria, Inc. ("Aphria"), a different Canadian company that was intertwined with Liberty (the "Hindenburg Report"); and (ii) a follow-up short-seller report released on December 6, 2018 that focused on Liberty (the "Liberty Report"). Defendants argued that because the Hindenburg Report did not disclose new information about Liberty, only Aphria, it was inadequate to plead loss causation as to Liberty. *See* ECF No. 54 at 28-29. In response, Plaintiffs argued that the two companies were so intertwined publicly that Liberty, also known as Aphria USA, followed Aphria's stock movements, and that Liberty investors could claim damages based on Liberty's December 3, 2018 stock price decline. *See* ECF No. 66 at 36-37. Plaintiffs' believe

3

this argument was valid, but Defendants had very credible defenses to this position. If the Court agreed with Defendants' argument on simply this one point, and found that the first disclosure could not be used to establish loss causation, the estimated damages in the case would have dropped significantly. Plaintiffs expert estimated the final disclosure caused less than $4 million in damages. Therefore, if this Court found only the second disclosure to have caused the Settlement Class' losses, the $1,800,000 settlement would compensate the Settlement Class for 46% of its losses.

Defendants also asserted another loss causation argument with regard to the Liberty Report, arguing that it could not form the basis for a securities claim because it disclosed no new information and the stock rose the day the Liberty Report was released. *See* ECF No. 54 at 29. Plaintiffs countered that the stock dropped intraday following the disclosure of the Liberty Report and relayed information that was not widely known. *See* ECF No. 66 at 37-38. Again here, Plaintiffs believed they had the better of these arguments, but there was significant risk that this Court would not agree.

There was a risk the case would be dismiss in its entirety or the class period would be limited, thereby reducing damages.

Oral argument was scheduled on the motions, but adjourned when the Parties informed the Court that they had reached an agreement in principle. (ECF No. 80.) The Court granted preliminary approval on July 8, 2021. (ECF No. 92.)

## III.    THE SETTLEMENT

After the motions to dismissed were fully briefed, the Parties engaged in a series of telephonic settlement conferences before an agreement was reached. The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed on November 17, 2020. The Memorandum of Understanding sets forth,

among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a cash payment by or on behalf of Defendants of $1,800,000 for the benefit of the Settlement Class. The Memorandum of Understanding was formalized in a Stipulation that was executed on January 8, 2021.

On January 8, 2021, Plaintiffs filed a motion for preliminary approval of settlement ("Preliminary Approval Motion") and accompanying documents. (ECF Nos. 82-84.) On February 16, 2021, the Court issued an order requiring further briefing on the Settlement. (ECF No. 87.) On March 24, 2021, Plaintiffs submitted a Supplemental Memorandum of Law in Further Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, including a declaration from the Claims Administrator in this Action. (ECF No. 88.) The Court preliminary approved the settlement on July 8, 2021. (ECF No. 92.)

The Court scheduled the Settlement Hearing for final approval of the Settlement, attorney's fees and expenses, Plaintiffs' compensatory award, and to hear any objections by Settlement Class Members, for November 15, 2021, at 11 a.m. *Id.* Liberty has paid $1.8 million into an escrow account for the Settlement Class's benefit. (David Decl. ¶ 23). The court-approved claims administrator, Strategic Claims Services ("SCS"), mailed a total of 20,337 Notices of Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Forms ("Proof of Claim") (collectively, the "Notice Packet") to potential Class Members, brokers and nominee holders. (*See* David Decl., Ex. 1 (Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.")) ¶ 5). Additionally, SCS was notified by one of the nominees that they emailed 17,182 of their customers to notify them of this settlement and provide direct links to the claims webpage. (Bravata Decl. ¶ 7.) The

Summary Notice of Pendency and Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice") was published on August 12, 2021. *Id.* ¶ 9 and Ex. C. As of the time of this filing on September 20, 2021, not a single Class Member has transmitted an objection to the Settlement or requested exclusion from the Class. *Id.* ¶¶ 12-13. The deadline to file an objection or submit a request for exclusion is October 25, 2021. (Preliminary Approval Order (ECF No. 92) ¶¶ 14, 17.)

## IV. THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). "To determine whether a settlement is fair, reasonable, and adequate, the Second Circuit instructs district courts to examine 'the negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness.'" *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 288 (S.D.N.Y. 2017) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009)); *see also In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014) (same). Courts consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores*, 396 F.3d at 116. The Second Circuit has repeatedly noted the "strong judicial policy in favor of settlements, particularly in the class action context." *Id.*[4] Moreover, the Supreme Court has cautioned that in evaluating a proposed class-action settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981). This is particularly important in complex class actions where substantial

---

[4] All internal citations and quotations are omitted herein, unless stated otherwise.

resources are conserved by avoiding the time, cost, and rigor of prolonged litigation. *See* 4 William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 13.44 (5th ed. 2014). The Settlement here is fair, adequate, reasonable, and not a product of collusion.

### A.   The Settlement Is Presumptively and Procedurally Fair

"So long as the integrity of the arm's-length negotiation process is preserved . . . *a strong initial presumption of fairness attaches to the proposed settlement.*" *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *10 (S.D.N.Y. July 27, 2007) (emphasis in original); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same); *In re Paine Webber Ltd. P'ships Litig*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (same), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Additionally, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is entitled to great weight." *EVCI*, 2007 WL 2230177, at *10; *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015) (finding courts should give "proper deference to the private consensual decision of the parties" and "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation"); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (holding that "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

The Settlement was reached through arm's-length negotiation, which included multiple discussions between the Settling Parties. (David Decl. ¶¶ 6, 19.) Plaintiffs believe that the claims asserted in the Action have merit, and that evidence would support their claims. (David Decl. ¶ 24.) However, the expense and length of continued proceedings necessary to prosecute the Action against Defendants through the motion to dismiss hearing, class certification, trial and through appeals would be great. (*Id.*) Additionally, the negotiations between the parties that led

to the settlement were informed by the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, and the difficulties and delays inherent in such litigation.  (*See id.*)  The arm's-length nature of the settlement negotiations supports the conclusion that the Settlement is fair and free of collusion.  *McReynolds v. Richards-Cantave*, 588 F.3d 790 , 803 (2d Cir. 2009) (A presumption of procedural fairness exists "where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.")

Further, in negotiating the Settlement, Plaintiffs benefitted from attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Of Counsel Cara David) who are highly experienced in complex class litigation and familiar with the case's legal and factual issues.  *See* David Decl., Ex. B (Pomerantz Resume); *Lyons v. Marrud, Inc.*, No. 66 Civ. 415., 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972) ("Experienced and competent counsel have assessed these problems and the probability of success on the merits . . . . The parties' decision regarding the respective merits of their positions has an important bearing on this case.").  The efforts of Lead Counsel, who are highly experienced in the area of complex securities fraud litigation, secured a Settlement that provides substantial benefits to the Class ($1.8 million in cash), especially considering the expense, risks, difficulties, delays, and uncertainties of continued litigation, trial, and post-trial proceedings.

The Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to their agreement to settle.  Lead Counsel (a) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Liberty's SEC and SEDAR filings and investor calls, and public reports and information concerning Liberty; (b) consulted damages experts; (c) thoroughly

8

researched the securities laws as well as the intricacies of Liberty's business, including its relationship with Aphria; (d) consulted with an investigator; (e) engaged in briefing related to several motions to dismiss the Complaint; (f) successfully negotiated the $1.8 million Settlement; and (g) actively supported the Settlement, including by reaching the terms of the Stipulation with Defendants, seeking the Court's approval, and overseeing the settlement-administration process. (*See* David Decl. ¶ 15, 18, 19, 56.)

The Settlement does not provide preferential treatment to Plaintiffs or any other Settlement Class Members. The proposed Plan of Allocation, which is set forth on pages 11-14 of the Notice, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Proofs of Claim. (David Decl. ¶¶ 40-51.) The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* Similar plans have repeatedly been approved by courts in this District. *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

For all these reasons, a strong initial presumption of fairness deservedly attaches to the Settlement, which resulted from a thorough arm's-length process. *See Van Oss v. N.Y.*, No. 10 Civ. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (finding "a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations.")

### B.    The Settlement Is Substantively Fair

Courts in the Second Circuit consider the nine factors enumerated in *Grinnell*, 495 F.2d at 463 (the "*Grinnell* factors"), to evaluate the substantive fairness of a settlement. *See Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 22-24 (2d Cir. 2013) (citing *Wal-Mart Stores*, 396 F.3d at 117-19). The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the

litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the circumstances. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018); *see also City of Providence v. Aéropostale, Inc.,* 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) (same). Further, a court's function in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or try the case by resolving issues intentionally left unresolved. *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666 at *7 (S.D.N.Y. Mar. 21, 2014). On balance, the *Grinnell* factors support approval of the Settlement.

### 1. Litigating Securities Claims Would be Long, Complex, and Expensive

The Settlement provides substantial and certain relief without the delay and expense of motion practice, discovery, class certification, trial, and post-trial proceedings. Because of the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(f)(7) ("PSLRA"), amendments to the Exchange Act, and supervening case law developments, such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), prosecution of securities class actions is inherently complex and lengthy. *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 WL 6889901, at *7 (S.D.N.Y. Dec. 18, 2019) ("Securities class actions are notoriously complex[.]"); *In re Bear Stearns*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. Nov. 9, 2012) ("[S]ecurities class actions are

10

notably difficult and notoriously uncertain[.]"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) (finding "most securities fraud cases[] are complex and challenging as regards both liability and damages" even when defendants "have admitted" errors); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

Even if the Complaint survived the motions to dismiss, if the parties did not agree to settle, they would have faced a continued, and expensive, discovery process, summary judgment briefing, and the risks of trial. A jury would have to determine numerous complex securities law issues and navigate battles of the experts regarding merits issues, market efficiency, loss causation, and damages. The Court and/or jury, depending on the proceeding, would have had to determine: (i) whether the alleged representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether Plaintiffs are entitled to a presumption of reliance; and (iv) the artificial inflation of Liberty stock and how much of the price declines were attributable to what Plaintiffs allege were the disclosures of information correcting the alleged false statements. *Any* recovery would be very uncertain and, because of the near certainty of appeals, inevitably delayed by years.

In this Action, many issues were hotly contested, including jurisdiction and venue. This is also a case where motion practice regarding discovery parameters was virtually inevitable due to the relationship between Liberty and Aphria. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement, . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently

11

make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).  Briefing of these discovery issues, and the location of some witnesses and documents outside this country, would have meant additional costs for the Settling Parties.  Lead Counsel would anticipate, given the complexities, review of at least hundreds of thousands of pages of documents, if not more, and taking many depositions.  In addition to merits discovery, the parties would have to engage experts through the remainder of the litigation.  This all would be a costly endeavor.

Even assuming a favorable trial outcome, Defendants would likely appeal, further delaying any benefit to the Class.  Moreover, even if a larger judgment were recoverable at trial, courts recognize that the delay occasioned by trial, post-trial, and appellate processes greatly reduces the value of any award.  *See In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510, 526 (E.D.N.Y. 2003) (approving settlement where action "would have taken many more years to finally resolve" and "exhaust all avenues of review"), *aff'd sub nom. Wal-Mart*, 396 F.3d 96.  Even large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of a post-trial judgment as a matter of law.  *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10, 11-18 (1st Cir. 1990) (reversing plaintiffs' multi-million dollar judgment after 11 years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1219, 1221-33 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1443-49 (11th Cir. 1997) (reversing $81.3 million jury verdict after nearly 7 years of litigation).  And, in this Action, damages were only expected to be less than $22 million maximum, making the upside of a lengthy trial minimal.

Thus, continued litigation presented great risk and uncertainty.  Conversely, the Settlement provides a gross recovery certain of $1.8 million in cash, less the attorneys' fees,

litigation expenses, administration costs, and Plaintiffs' award that the Court may approve. The substantial and certain Settlement reached in this Action, compared to the significant complexity, delay, expense, and uncertainty of attempting to litigate to trial, weighs heavily in favor of the Settlement. *In re Sturm, Ruger, & Co. Inc. Sec. Litig.,* No. 3:09cv1293 (VLB), 2012 WL 3589610, at *13-14 (D. Conn. Aug. 20, 2012) (finding complexity, expense, and duration of litigation supported settlement approval in securities-fraud class action); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sept. 29, 2003) (same).

### 2.    The Class Reaction Supports Final Approval

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy[.]" *Bear Stearns*, 909 F. Supp. 2d at 266; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (same); *see also Aéropostale*, 2014 WL 1883494, at *5 (finding the Class's reaction to the Settlement is a significant factor for the court to weigh when considering its adequacy). When there are no objectors, as is the case here, the court can view this as indicative of the adequacy of the settlement. *See Wal-Mart*, 396 F.3d at 118; *Guevoura,* 2019 WL 6889901, at *7 ("[T]he absence of objectors may itself be taken as evidencing the fairness of a settlement." (quoting *Paine Webber*, 171 F.R.D. at 126)); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (finding that the "small number of objections . . . strongly favor the Settlement").

The Settlement Class is overwhelmingly in favor of the Settlement. Summary Notice was published on August 12, 2021, and CSC has seen that almost 38,000 potential Settlement Class Members were provided direct notice. (Bravata Decl., ¶¶ 7, 9, Ex. B.) The Notice contains a description of the Action, the Settlement, and information about Settlement Class

Members' right to participate in the Settlement by submitting Proofs of Claim; to object to the Settlement, the Plan of Allocation, and/or the Fee and Expense Application; or to request exclusion from the Class. *Id.*, Ex. A (Notice Packet). As of the time of this filing, not a single Class Member has objected to the Settlement or requested exclusion from the Settlement Class.

The Settlement Class's favorable reaction supports approving the Settlement. *See Guevoura*, 2019 WL 6889901, at *7 (holding that "[t]he absence of negative feedback from Class Members . . . strongly supports approval of the Settlement"); *Bear Stearns*, 909 F. Supp. 2d at 267 (holding that the low rate of exclusion and objection "weighs strongly in favor of approval"); *AOL Time Warner*, 2006 WL 903236, at *10 (same).

### 3. Plaintiffs Had Sufficient Command of the Case's Merits to Enter the Settlement

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation . . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45 (4th ed. 2002). As a result, courts regularly approve settlements where, as here, Lead Counsel has "engaged in sufficient investigation of the facts." *Am. Bank*, 127 F. Supp. 2d at 425-26; *see also Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019) (approving final settlement where case "settled swiftly"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding formal discovery unnecessary where the parties "engaged in sufficient investigation of the facts").

For this reason, courts have commended class counsel for recognizing when—as is the case here—a prompt resolution is in the best interest of the Class. *See, e.g., In re Sony SXRD*

14

*Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008); *Veeco,* 2007 WL 4115809, at *7 ("[T]he parties need not have engaged in full discovery."); *AOL Time Warner*, 2006 WL 903236, at *10 ("Courts have approved settlements at all stages of the proceedings. The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case[.]").

The Action here had advanced through multiple amendments and motion to dismiss briefing.  Plaintiffs had a thorough understanding of the strengths and weaknesses of their claims.

For these reasons, and those detailed in Section IV.A., *supra*, the parties and counsel possessed sufficient information on the merits of the claims to enter the Settlement.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) (approving a settlement even before full merits discovery began because the parties had already "conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    There Are Substantial Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same).  In other words, "[i]n assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison*

15

*Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (quoting *Maley,* 186 F. Supp. 2d at 364). Courts "approve settlements where plaintiffs would have faced significant legal and factual obstacles." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 37 (E.D.N.Y. 2019).

Here, despite Lead Counsel's confidence, there are significant risks to proving liability, loss causation, and damages. And even if Plaintiffs prevailed through the motion to dismiss and at trial, a jury verdict could be undone because of these potential difficulties. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (affirming district court's grant of judgment as a matter of law against plaintiff for failure to prove loss causation after jury verdict partially in favor of plaintiff).

If the Settlement were not finally approved, Plaintiffs risk no recovery. As stated *supra*, the validity of Plaintiffs' claims (which Plaintiffs believe had merit and would have been sustained by this Court) was hotly contested by Defendants. There were three separate motions to dismiss outstanding. Even if Plaintiffs claims in their entirety survived the motions to dismiss, a class would still need to be certified and that class would need to survive summary judgment and establish falsity, materiality and scienter. Additionally, as discussed, even the Court's jurisdiction was contested in this litigation. If the Court dismissed based on jurisdiction or venue grounds, Plaintiffs would have had difficulty in carrying on with the action, as it is unlikely an amendment (if the Court even allowed one) would have bolstered Plaintiffs' claims in this regard.

These daunting risks of establishing liability and damages favor final approval. *See, e.g.*, *See AOL Time Warner, Inc.* 2006 WL 903236, at *11 (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial").

16

### 5. The Risks of Maintaining Class Action Status Through Trial

While certification of securities class actions remains the norm, it is by no means automatic. *See, e.g.*, *Youngers v. Virtus Inv. Partners Inc.*, No. 15cv8262, 2017 WL 2062986, at *3 (S.D.N.Y. May 15, 2017) (denying motion for certification of a class alleging securities fraud "because individual issues of reliance will predominate"); *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188 (SRU), 2015 WL 1036985, at *12 (D. Conn. Mar. 10, 2015) (denying motion for certification of a class alleging securities fraud on standing grounds); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 11 Civ. 4209 (KBF), 2013 WL 5815472, at *22 (S.D.N.Y. Oct. 29, 2013) (denying motion for class certification of class of U.S. purchasers because "individualized questions as to the named plaintiffs threaten to predominate"); *George v. China Auto. Sys., Inc.*, 11 Civ. 7533 (KBF), 2013 WL 3357170, at *13 (S.D.N.Y. July 3, 2013) (denying motion for class certification in putative securities class action). This also always poses a risk in these types of litigations.

### 6. The Ability of Defendants to Withstand a Greater Judgment

Even if a judgment for a greater amount were a burden that Liberty could bear, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair." *AOL Time Warner*, 2006 WL 903236, at *12 (citing *D'Amato*, 236 F.3d at 86). The Court must weigh this factor "in conjunction with all of the *Grinnell* factors; most notably the risk of the class prevailing and the reasonableness of the settlement fund." *Id.* at *12.[5] Thus, the Settlement of $1.8 million in cash plainly represents a fair compromise between the parties, and it should be finally approved.

---

[5] After the Memorandum of Understanding was entered into, Liberty was acquired by Ayr Strategies Inc.. It is unknown how this acquisition would have impacted the Action or how the Action would have impacted the acquisition.

17

### 7.    The Settlement Amount is Within the Range of Reasonableness

Courts typically analyze the last two *Grinnell* factors together.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable*." In re Flag Telecom Holdings*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov 8, 2010). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held that "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

The Settlement provides for a recovery of $1.8 million in cash, before fees and expenses. This is an immediate benefit to the Settlement Class and is well within the range of reasonableness, particularly in light of the possible recovery and the substantial risks presented by the Action.  Plaintiffs' consultation with their expert indicated that, based on the Complaint's allegations, class-wide damages were under $22 million.  Using Plaintiffs' estimate, the Settlement returns approximately 8.3% of estimated damages based on that analysis.  (David Decl. ¶ 29).

This recovery is also very favorable to the Class because it is above the median settlement for similar securities class actions. *See* Cornerstone Research, "Securities Class Action Settlements — 2019 Review and Analysis," at 6 (the median recovery in 10(b) cases in 2019 was 4.8% of estimated damages); NERA Economic Consulting, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review, at 19 ("For cases settled between 2012 and 2020, the ratio of settlement to Investor Losses is. . . 5.2% for cases with Investor

18

Losses between $20 million and $50 million."); *see also Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980, ECF Nos. 60, 64, 86 (S.D.N.Y. orders granting preliminary and final approval given to 2020 settlement that represented 5.78% of potential damages).

Courts regularly approve securities class action settlements where the settlement amount is as—or even less—substantial as the 8.3% of total estimated damages that Plaintiffs have achieved here. *See, e.g.*, *In re China Sunergy Sec. Litig*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (finding "average settlement amounts in securities fraud class actions . . . over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Initial Pub. Offering Sec. Litig.,* 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009) (citing law review article finding "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies that show the average securities-fraud class action settlement since 1995 yielded recovery between 5.5%  to 6.2% of estimated losses); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); ECF No. 88 (compiling recent approved settlements).

## V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims." *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y.

19

2012) (alteration and citations omitted).  Pro-rata distributions are regularly "determined to be fair, adequate, and reasonable." *Fleisher*, 2015 WL 10847814, at *12 (collecting cases).

The proposed Plan of Allocation, developed by Lead Counsel in consultation with SCS, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Proof of Claim.  (David Decl. ¶¶ 42-51.)  A recognized-loss amount will be calculated for each purchase or acquisition of Liberty Shares during the Class Period listed on the Proof of Claim and for which adequate documentation is provided.  *Id.*  The Net Settlement Fund is allocated to the Liberty Shares that the Settlement covers based on the proportionate trading volume for these securities during the Class Period.  *Id.*  In addition, the calculation of Recognized Loss amounts is based on the difference between the amount of estimated alleged artificial inflation in Liberty Shares on the purchase date and the amount of estimated alleged artificial inflation on the sale date.  *Id.*  The sum of the recognized-loss amounts for all of a Claimant's purchases during the Class Period is the Claimant's Recognized Claim.  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the size of their Recognized Claims.  *Id.*

Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Liberty Shares attributable to the conduct alleged.  Moreover, the Plan of Allocation is set forth in the Notice, and to date no objections to the Plan of Allocation have been received from any Class Members.  *Id.* ¶ 57.

Accordingly, for all of the reasons set forth herein, the Plan of Allocation is fair and reasonable and should be granted final approval for the purpose of administering the Settlement.

## VI.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Preliminary Approval Order certified the Settlement Class for settlement purposes

20

under Rules 23(a) and (b)(3).  *See* Preliminary Approval Order ¶¶ 1-2.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Preliminary Approval (ECF No. 126), and the Supplemental Memorandum of Law in Further Support of Plaintiffs' Unopposed Motion for Preliminary Approval (ECF No. 88), Plaintiffs respectfully request that the Court affirm its certification in the Preliminary Approval Order of the Settlement bClass under Rules 23(a) and (b)(3).

## VII.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e)(1).  Notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards.  The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including (i) an explanation of the Action and claims asserted; (ii) the definition of the Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses sought by Counsel, administrative costs, and the award to Plaintiffs; (vii) the rights of Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Class Member to examine the Court records; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (xi) a statement of the binding effect of a judgment on Settlement Class Members.  (David Decl. ¶ 37).

The Notice program was carried out by SCS, a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Lead Counsel. (Bravata Decl. ¶¶ 1-8.)  In accordance with the Court's order, SCS distributed tens of thousands Notice Packets to potential Class Members, brokers, and nominee holders.  *Id.*  The Summary Notice was published online over *Globe Newswire* on August 12, 2021.  *Id.* ¶ 9, Ex. C.  The Notice and Stipulation are also available on SCS's website. *Id.* ¶ 11. This combination of first-class mail to all Class Members who could be identified with reasonable effort, supplemented by notice in appropriate, widely circulated publications, and posted on the Internet, was "the best notice . . . practicable under the circumstances."  Rule 23(c)(2)(B); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014).

## VIII.   CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated:  September 20, 2021

**POMERANTZ LLP**

*/s/Cara David*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
          cdavid@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

22

23

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Cara David*
Cara David

24