UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY LIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY HEALTH SCIENCES INC., GEORGE SCORSIS, RENE GULLIVER, and VIC NEUFELD,<br><br>Defendants. | Case No.  1:19-cv-00161-MKV-SLC |

**DECLARATION OF CARA DAVID IN SUPPORT OF PLAINTIFFS' (1) UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT CLASS ACTION SETTLEMENTAND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND (2) UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND COMPENSATORY AWARD <u>TO PLAINTIFFS</u>**

**TABLE OF CONTENTS**

I.    SUMMARY OF PLAINTIFFS' CLAIMS ........................................................... 4

II.    PROCEDURAL HISTORY .......................................................................... 5

III.    THE SETTLEMENT ................................................................................. 7

    A.    Reasons for the Settlement ........................................................... 7

    B.    Settlement Terms ........................................................................ 9

IV.    THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFFS'
DISSEMINATION OF NOTICE ...................................................................... 9

    A.    Preliminary Approval Order ......................................................... 9

    B.    Notice ....................................................................................... 11

    C.    Reaction of the Settlement Class .................................................. 12

    D.    The Plan of Allocation ................................................................ 12

V.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSMENT OF EXPENSES ........................................................ 15

    A.    Attorneys' Fees ......................................................................... 15

    B.    Costs and Expenses ................................................................... 18

VI.    AN AWARD TO THE PLAINTIFFS IS WARRANTED ............................................. 18

i

I, Cara David, declare and state, under penalty of perjury, that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am Of Counsel at the Pomerantz LLP ("Pomerantz") law firm, Lead Counsel on behalf of Lead Plaintiff Nancy Lin and Plaintiff Gilbert Lee Silverbird (together, "Plaintiffs") in the action styled as *Lin v. Liberty Health Sciences Inc. et al.*, No. 1:19-cv-00161-MKV-SLC (S.D.N.Y.) (the "Action").[1]

2.      I am duly admitted to practice in New York and before this Court.  I have personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto.

3.      I respectfully submit this Declaration ("Decl." or "Declaration") in support of the following: (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (2) Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs.  The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, filed on the docket July 8, 2021.  (ECF. No. 92, "Preliminary Approval Order.")

4.      This Declaration sets forth the nature of the claims asserted, the Action's procedural history, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and Plan of Allocation are fair, reasonable, and adequate, and why Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Plaintiffs should be approved.

---

[1] All capitalized terms that are not otherwise defined herein have the meanings provided in the Stipulation of Settlement, dated January 8, 2021 (ECF No. 84-1).  Unless indicated otherwise, "ECF No." references herein are to the docket in this Action.

5.      The settlement contemplated by the Stipulation ("Settlement") provides for a payment of one million eight hundred thousand U.S. dollars ($1,800,000.00) in cash in exchange for the release of all claims asserted by Plaintiffs against Liberty Health Sciences, Inc. ("Liberty"), Rene Gulliver, Vic Neufeld, and George Scorsis (collectively, "Defendants") and completely resolves this Action.  While Lead Counsel believes that the allegations in the Second Amended Settlement Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 25) have substantial merit, Lead Counsel respectfully submits that the Settlement represents an excellent result for the Settlement Class.

6.      The Settlement is the result of extensive arm's-length settlement negotiations among esteemed and experienced counsel.  The ability of Counsel to reach a compromise in light of the many complex issues present in this Action evidences the skill of representation and the quality of the results.

7.      Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), mailed a total of 20,337 Notices of Proposed Settlement of Settlement Class Action ("Notice") and Proof of Claim and Release Forms ("Proof of Claim") (collectively, the "Notice Packet") to potential Settlement Class Members, brokers and nominee holders.  (*See* David Decl., Ex. 1 (Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.")) ¶ 5).  Additionally, SCS was notified by one of the nominees that they emailed 17,182 of their customers to notify them of this settlement and provide direct links to the claims webpage.  (Bravata Decl. ¶ 7.) The Summary Notice of Pendency and Proposed Settlement of Settlement Class Action and Final Approval Hearing ("Summary Notice") was

2

published on August 12, 2021. *Id.* ¶ 9 and Ex. C. The Notice was also posted online at www.strategicclaims.net/Liberty/. *Id.* ¶ 11.

8.    For approximately two years prior to the Settlement, Lead Counsel adeptly navigated the complicated issues of law and fact inherent in prosecuting this claim. The Settlement provides an immediate and certain benefit to the Settlement Class, considering the significant risks that a smaller recovery—or, indeed, no recovery—might be achieved in the future. While the Settling Parties had briefed motions to dismiss, they had yet to be decided. While Plaintiffs believe they would have prevailed on the motions to dismiss, and the case would have continued, it was uncertain as there were many issues for adjudication before the Court.

9.    Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of six hundred thousand U.S. dollars ($600,000) plus accrued interest, and reimbursement of expenses in the amount of $28,818.78 as fair and reasonable. The fee award constitutes one-third (33.333%) of the Settlement Fund, which is within the range of attorneys' fees regularly awarded by courts within the Second Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the Settlement Class' reaction to the fee request. The Notice Packet published stated Lead Counsel could be awarded attorneys' fees up to this amount. (ECF No. 84-3) The expenses incurred were reasonable and necessary to prosecute this Action and to reach this favorable result for the Settlement Class. Lead Counsel also respectfully requests an award of $5,000 for Lead Plaintiff Nancy Lin and $3,000 for Plaintiff Gilbert Lee Silverbird, totaling eight thousand U.S. dollars ($8,000.00), for their substantial efforts in leading the prosecution of the Action.

## I.    SUMMARY OF PLAINTIFFS' CLAIMS

10.    Plaintiffs' claims are set forth in the Second Amended Complaint (ECF No. 48), which asserts claims against Defendants on behalf of Liberty investors during the Settlement Class Period. The Complaint alleges that, during the Settlement Class Period, Defendants issued false and misleading statements pertaining to Liberty's business. Specifically, the Complaint alleges that Defendants set out to defraud investors even before the Company was officially formed.

11.    Liberty was founded as the United States extension of another Canadian company, Aphria, Inc. ("Aphria").  The Complaint alleges that the formation of Liberty was coordinated by Andrew DeFrancesco, a longtime Aphria investor and consultant. As part of the deal orchestrated by DeFrancesco, an undisclosed list of individuals and entities—including many associated with DeFrancesco—were issued 242.6 million shares for nearly nothing, *i.e.*, $0.001. While Liberty promoted Aphria's 37.63% stake of Liberty, and the fact that Aphria's CEO, Defendant Vic Neufeld, was Chairman of the Board of Liberty, Liberty never disclosed that DeFrancesco, and his family and friends also had a stake in the Company. Then, in January 2018, Liberty announced it was buying a company, 242 Cannabis Canada Ltd. ("242 Cannabis"), that was going to buy a property in Florida. What Liberty did not announce was that 242 Cannabis was going to be paying millions less for the property than Liberty would be paying 242 Cannabis for it just six days before Liberty's purchase. DeFrancesco-affiliated entities and individuals and members of the Serruya family owned 242 Cannabis. The deal was disclosed as an "arms length transaction" because no one who owned 242 Cannabis was technically a Liberty officer or director.

12.    As the Complaint details, on December 3, 2018, Hindenburg Research and Quintessential Capital Management, two market analysts, released a report showing the assets

4

Aphria bought from DeFrancesco et al. were virtually worthless. The report named DeFrancesco and Defendant Neufeld, among others, as part of a scheme to line insiders' pockets. Aphria's stock plummeted along with Liberty's stock. Three days later, Hindenburg Research released another report, this time focusing on Liberty.

13.     The Complaint charged that the conduct of the Defendants—as detailed in the above two paragraphs—violated Sections 10(b) and 20(a) of the Securities Exchange Act (15 U.S.C. §§ 78j(b), and 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

14.     Liberty continues to deny that they committed any acts or omissions giving rise to any liability and/or violation of the law.

## II.    PROCEDURAL HISTORY

15.     Following the reports of the market analysts, Lead Counsel began a thorough investigation.   Among other investigative efforts, Lead Counsel reviewed and analyzed information regarding Liberty's SEC and SEDAR filings, press releases, analyst reports, share-price movements, and public statements, as well as information in news articles and other publications.  Lead Counsel also engaged an investigator who spoke to former employees.

16.     An initial complaint was filed by Nancy Lin on January 7, 2019.  (ECF No. 1.) Nancy Lin filed a motion to be appointed Lead Plaintiff on March 8, 2019.  (ECF No. 7.)  The Court issued an order appointing her Lead Plaintiff on July 17, 2019.  (ECF No. 18.)  Lead Plaintiff filed an amended complaint on September 19, 2019 against Defendants.  (ECF No. 25.)

17.     Following a meet and confer regarding potential motions to dismiss the Amended Complaint, Lead Plaintiff and Plaintiff Gilbert Lee Silverbird filed a Second Amended Complaint on January 21, 2020 (the "Complaint," ECF No. 48) asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")

and Rule 10b-5 promulgated thereunder, and against Rene Gulliver, Vic Neufeld, and George Scorsis (the "Individual Defendants") under Section 20(a) of the Exchange Act.  The Complaint alleged that Liberty and the Individual Defendants made misrepresentations and/or omissions of material fact in public statements to the investing public concerning Liberty's relationship with Aphria Inc. and its acquisition of certain property in Florida.

18.     On April 24, 2020, three separate motions to dismiss the Complaint were filed by (i) Liberty (ECF No. 54); (ii) Rene Gulliver and George Scorsis (ECF No. 58); and (iii) Vic Neufeld (ECF No. 57).  Plaintiffs filed a single omnibus opposition to these three motions to dismiss on June 1, 2020 (ECF No. 66).  Three replies were filed in further support of the motions to dismiss on June 22, 2020 (ECF Nos. 67, 69, 70).

19.     While these motions were pending, the Parties engaged in a series of telephonic settlement conferences before an agreement was reached.  The agreement was memorialized in a memorandum of understanding (the "Memorandum of Understanding") which was fully executed on November 17, 2020.  The Memorandum of Understanding sets forth, among other things, the Parties' agreement to fully and finally settle and release all claims that were asserted or could have been asserted in the Action in return for a cash payment by or on behalf of Defendants of $1,800,000 for the benefit of the Settlement Class.  The Memorandum of Understanding was formalized in a Stipulation that was executed on January 8, 2021.

20.     On January 8, 2021, Plaintiffs filed a motion for preliminary approval of settlement ("Preliminary Approval Motion") and accompanying documents.  (ECF Nos. 82-84.)

21.     On February 16, 2021, the Court issued an order requiring further briefing on the Settlement.   (ECF No. 87.)   On March 24, 2021, Plaintiffs submitted a Supplemental Memorandum of Law in Further Support of Plaintiffs' Unopposed Motion for Preliminary

Approval of the Settlement, including a declaration from the proposed Claims Administrator in this Action. (ECF No. 88.)

22. The Court issued an Order Preliminarily Approving Settlement and Providing for Notice on July 8, 2021 ("Preliminary Approval Order," ECF No. 92). The Court scheduled the Settlement Hearing for final approval of the Settlement, attorney's fees and expenses, Plaintiffs' compensatory award, and to hear any objections by Settlement Class Members, for November 15, 2021, at 11 a.m. *Id.*

23. Thereafter, Liberty paid $1.8 million into an escrow account for the Settlement Class' benefit, two hundred and fifty thousand dollars ($250,000.00) of which is earmarked for Notice and Administration Expenses.

## III. THE SETTLEMENT

### A. Reasons for the Settlement

24. Although Plaintiffs and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action. Plaintiffs and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

25. This Litigation has not gotten beyond the motion to dismiss phase. However, it was already clear that this case in particular was not an easy one. Each Defendant disputed the Court's personal jurisdiction over Defendants, convenience of the forum, whether Plaintiffs sufficiently alleged a material misstatement or omission, whether Plaintiffs sufficiently alleged scienter and whether the case should be dismissed on extraterritoriality grounds under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010). Additionally, loss causation was hotly

contested. In the Complaint, Plaintiffs alleged two corrective disclosures: (i) a short-seller report that was released on December 3, 2018 and focused on Aphria (the "Hindenburg Report"); and (ii) a follow-up short-seller report released on December 6, 2018 that focused on Liberty (the "Liberty Report"). Defendants argued that because the Hindenburg Report did not disclose new information about Liberty, only Aphria, it was inadequate to plead loss causation as to Liberty. See ECF No. 54 at 28-29. In response, Plaintiffs argued that the two companies were so intertwined publicly that Liberty, also known as Aphria USA, followed Aphria's stock movements, and that Liberty investors could claim damages based on Liberty's December 3, 2018 stock price decline. See ECF No. 66 at 36-37. Plaintiffs believe this argument was valid, but Defendants had very credible defenses to this position. If the Court agreed with Defendants' argument on simply this one point, and found that the first disclosure could not be used to establish loss causation, the estimated damages in the case would have dropped significantly. Plaintiffs' expert estimated the final disclosure caused less than $4 million in damages.

26.     Defendants also asserted a loss causation argument with regard to the Liberty Report, arguing that it could not form the basis for a securities claim because it disclosed no new information and the stock rose the day the Liberty Report was released. See ECF No. 54 at 29. Plaintiffs countered that the stock dropped intraday following the disclosure of the Liberty Report and relayed information that was not widely known. See ECF No. 66 at 37-38. Again here, Plaintiffs believed they had the better of these arguments, but there was significant risk that this Court would not agree.

27.     Even if the Court sustained all of Plaintiffs' claims, many issues, including class certification, still remained. The litigation would have undoubtably been time consuming and costly.

28.     In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Settlement Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a very favorable result for the Settlement Class.

**B.     Settlement Terms**

29.     Plaintiffs and Lead Counsel retained an expert who estimated damages at under $22 million.  The Settlement provides the Settlement Class with $1.8 million in cash, which Plaintiffs estimate at approximately 8.3% of estimated damages.

30.     The $1.8 million Settlement amount is a very favorable to the Settlement Class because it is above the median settlement for similar securities Settlement Class actions. *See* Cornerstone Research, "Securities Settlement Class Action Settlements — 2019 Review and Analysis," at 6 (the median recovery in 10(b) cases in 2019 was 4.8% of estimated damages); NERA Economic Consulting, "Recent Trends in Securities Settlement Class Action Litigation: 2020 Full-Year Review, at 19 ("For cases settled between 2012 and 2020, the ratio of settlement to Investor Losses is. . . 5.2% for cases with Investor Losses between $20 million and $50 million."); *see also Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980, ECF Nos. 60, 64, 86 (S.D.N.Y. orders granting preliminary and final approval given to 2020 settlement that represented 5.78% of potential damages).

31.     Liberty has not admitted to any liability or any wrongdoing as part of the Settlement and adamantly maintains that it is not liable to the Settlement Class.

## IV.     THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFFS' DISSEMINATION OF NOTICE

### A.     Preliminary Approval Order

32.     On July 8, 2021, the Court issued the Preliminary Approval Order (ECF No. 92).

33.    In the Preliminary Approval Order, the Court:

a)    preliminarily approved the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

b)    scheduled a Settlement Hearing for November 15, 2021, at 11 a.m., to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; whether a judgment as provided in the Stipulation should be entered; whether the proposed Plan of Allocation should be approved; and to determine any amount of fees and expenses that should be awarded to Lead Counsel and to Plaintiffs;

c)    appointed Strategic Claims Services ("SCS" or "Claims Administrator") to supervise and administer the notice procedure as well as the processing of claims;

d)    approved the form and content of the Notice of Proposed Settlement of Settlement Class Action ("Notice"), the Proof of Claim and Release form ("Proof of Claim"), and the Summary Notice;

e)    directed SCS to take all reasonable efforts to cause a copy of the Notice and Proof of Claim to be mailed by first-Settlement Class mail to potential Settlement Class Members;

f)    directed copies of the Notice and Proof of Claim to be posted on a SCS website designated for the Action no later than July 29, 2021 (the "Notice Date");

g)    directed Counsel, through SCS, to cause the Summary Notice to be posted over *GlobeNewswire* no later than fourteen (14) calendar days after the Notice Date;

h)    directed Counsel to serve on Defendants' counsel and file with the Court proof of such mailing and publication at least seven (7) calendar days prior to the Settlement Hearing;

i)    established procedures and deadlines for Settlement Class Members to object to the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Plaintiffs and to appear at the Settlement Hearing; and

j)    established procedures and deadlines for Settlement Class Members to submit Proofs of Claim or seek exclusion.

10

**B.    Notice**

34.    Attached hereto as Ex. 1 is a true and correct copy of the Bravata Declaration, which sets forth the efforts undertaken by SCS to mail the Notice and Proof of Claim to potential Settlement Class Members, to publish the Summary Notice, and to establish the website and Internet notice.

35.    As detailed in the Bravata Decl., SCS mailed or caused to be mailed a total of 20,337 Notices of Proposed Settlement of Settlement Class Action ("Notice") and Proof of Claim and Release Forms ("Proof of Claim") (collectively, the "Notice Packet") to potential Settlement Class Members, brokers and nominee holders.  Additionally, SCS was notified by one of the nominees that they emailed 17,182 of their customers to notify them of this settlement and provide direct links to the claims webpage.  (Bravata Decl. ¶ 7.)  The Summary Notice was posted over *GlobeNewswire* on August 12, 2021.

36.    Additionally, SCS posted the Notice Packet, the Preliminary Approval Order, and the Stipulation on SCS's website, https://www.strategicclaims.net/Liberty/.

37.    As required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, 15 U.S.C. §78u-4(f)(7), the Notice: (a) described the nature of the Action; (b) included the definition of the Settlement Class; (c) set forth the Settlement Class' claims; (d) described the Settlement's terms; (e) described the Plan of Allocation; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 33.333% of the Settlement Fund, plus reimbursement of expenses up to $35,000, and an award for Plaintiffs of $8,000.00 cumulative; (g) advised Settlement Class Members of the right to exclude themselves from the Settlement Class and the binding effect of not doing so; (h) provided the deadline and procedure for filing a proof of claim, opting-out of the Settlement, or opposing the Settlement, Plan of Allocation, award of attorneys' fees, reimbursement of expenses, or award to Plaintiffs; (i) provided the necessary information for any

11

Settlement Class Member to examine the Court records should they so desire; (j) provided the date, time, and place of the Settlement Hearing; (k) summarized the reasons why the Settling Parties are proposing the Settlement; (l) provided the contact information for Lead Counsel; (m) provided instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (n) stated the binding effect of a judgment on Settlement Class Members.

38.     The notice procedures set forth above satisfied federal due process because they more than adequately apprised the interested parties of the pendency of the Action and afforded them the opportunity to present their objections.

### C.      Reaction of the Settlement Class

39.     To date, neither Lead Counsel nor defense counsel has received any objection to the Settlement, the Plan of Allocation, the attorneys' fees award, the requested reimbursement of expenses, or the award to Plaintiffs from any Settlement Class Member, nor have they received any requests for exclusion from the Settlement Class.

### D.      The Plan of Allocation

40.     Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Proof of Claim to SCS postmarked no later than seven (7) calendar days after the date of the Settlement Hearing.  All Settlement Class Members who wish to exclude themselves from the Settlement must file a request for exclusion by October 25, 2021.

41.     As set forth in the Notice, all Settlement Class Members who timely file a valid Proof of Claim form entitling him/her to a recovery of $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of attorneys' fees, expenses, notice/administration expenses, Plaintiffs' award, and taxes incurred on interest income earned by the gross Settlement

12

Fund. The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.

42. The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged fraud, as opposed to losses caused by market or industry factors not related to the alleged fraud.

43. The Plan of Allocation was formulated by Lead Counsel, in consultation with a well-respected and experienced financial consultant, and was designed to ensure that the distribution of the Settlement Fund was fair and consistent with Plaintiffs' theory of the case, which asserted that there was a decline in the price of Liberty Shares reflecting a disclosure of the truth relating to the alleged misconduct and to ensure that the allocation comported with the federal securities laws, including principles of loss causation.

44. The Plan of Allocation does not compensate losses resulting from "in and out" transactions—losses from sales made prior to revelation of truth. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

45. Perhaps most importantly, the Plan of Allocation does not discriminate between Settlement Class Members in the same position, as each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund.

46. Lead Counsel and their financial consultant determined that this was the fairest method of allocation of the Net Settlement Fund.

47. A plaintiff incurs damages when purchasing a share at a price inflated as a result of false or misleading statements and/or omissions, provided that a later curative disclosure of

that fraud causes the security price to decline.  Price inflation can be created by material misrepresentations and/or omissions on or before the purchase date, which remain uncorrected in whole or in part at that date.  Damages are mitigated if the share is later sold, while the price remains inflated, so that the original purchaser receives at sale an offsetting "bonus" equal to the dollar amount of inflation remaining at the sale date.  Price inflation may be measured from changes in security prices, net of market, industry, and other non-fraud-related effects, when the true condition and prospects of the company are partially or fully disclosed; price inflation present at the purchase date may be estimated by measuring the portion of the price decline caused by a curative disclosure.

48.    The actual loss suffered by a Settlement Class Period purchaser (between July 20, 2017 and December 6, 2018, both dates inclusive) in this Action is readily observed based on the disclosure dates.  If a Liberty Share was sold before December 3, 2018 (the date of the Hindenburg Report), the Recognized Loss for that Share is $0.00, and any loss suffered is not compensable under the federal securities laws.

| INFLATION TABLE A | |
| :---: | :---: |
| **Liberty Shares Purchased or Otherwise Acquired During the Settlement Class Period** | |
| **Period** | **Inflation** |
| July 20, 2017 to December 2, 2018, inclusive | $.42 per share |
| December 3, 2018 to December 6, 2018, inclusive | $.06 per share |
| After December 6, 2018 | $.00 per share |

49.    Furthermore, in accordance with the "Limitation on Damages" provisions of the PSLRA (15 U.S.C. §78u-4(e)), damages on a share purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for the share and the average price of the share during the 90-Day Lookback Period.  Damages on shares

14

purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for the share and the rolling average price of the share during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

50.    Additionally, under the U.S. Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), damages are assessed only for shares purchased during the Settlement Class Period and retained through at least the first alleged curative disclosure—shares purchased during the Settlement Class Period and sold before the alleged curative disclosure do not incur damages.

51.    There have been no objections to the Plan of Allocation, which is set forth in the Notice.  Plaintiffs respectfully submit that it is fair, reasonable, and adequate and should be approved by the Court.

## V.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSMENT OF EXPENSES

### A.    Attorneys' Fees

52.    Lead Counsel have represented the Settlement Class on a wholly contingent basis for approximately two years, not receiving any payment for their service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement. Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

53.    The Notice informed Settlement Class Members that Lead Counsel would apply for attorneys' fees in the amount of up to 33.333% of the Settlement Fund, plus reimbursement of expenses up to $35,000, and an award to Plaintiffs up to $8,000.00 in total.

15

54.     Lead Counsel intends to share part of any attorneys' fees awarded by the Court with other counsel in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action, as provided for in Paragraph 7.2 of the Stipulation.

55.     As discussed in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs filed concurrently herewith, the requested fee is within the range of reasonable fees awarded in common-fund cases.  The fee is also strongly supported and should be approved based on the facts on this case, including the superb result achieved for the Settlement Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis.

56.     As set forth in the Lodestar Report included as Ex. A to the Declaration of Cara David on Behalf of Pomerantz LLP in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, dated September 20, 2021, which is itself submitted as Ex. 2 hereto ("Pomerantz Decl."), Pomerantz has committed 609.94 hours to litigating this Action from the initial investigation to its resolution, which includes time spent on:

    a.  Preparing briefing in connection with the motion for appointment of lead plaintiff;

    b.  Retaining and working with investigators to locate and interview numerous confidential witnesses;

    c.  Reviewing and analyzing Liberty's Settlement Class Period and pre- and post-Settlement Class Period SEC and SEDAR filings, annual reports, press releases, investment conference transcripts, and other public statements;

    d.  Thoroughly researching the securities laws and intricacies of Liberty's business and place in an intertwined network of companies;

    e.  Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

16

f.  Opposing the multiple Motions to Dismiss filed by Defendants, which raised and evaluated numerous complex issues specific to the Action;

g.  Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and worked with the Claims Administrator to effectuate notice and oversee the administration process;

h.  Securing the services of the Escrow Agent;

i.  Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement (including detailed supplemental briefing) and provide notice of the Settlement to Settlement Class Members; and

j.  Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

57.  Lead Counsel's expertise has been vital to obtaining such a favorable result for the Settlement Class.  As set forth in detail in the Pomerantz firm resume/biography, attached as Ex. C to the Pomerantz Decl., Pomerantz is a nationally-recognized Settlement Class-action firm with extensive experience litigating and negotiating settlements as lead or co-Counsel in complex securities Settlement Class actions.  Pomerantz has been appointed lead or co-lead counsel in many complex securities Settlement Class actions and has recovered substantial sums for clients and Settlement Class members.  Pomerantz has prosecuted hundreds of such cases to successful resolution in its 80-year history and obtained billions of dollars in compensation for Settlement Class members.

58.  Based on the hours expended by Pomerantz and the current billing rates for the firm's professionals, the total lodestar is $422,299.00.[2]  The lodestar results in a multiplier of approximately 1.42, which is determined by dividing the $600,000 requested fee by the firms' $422,299.00 total lodestar.  This is below the multiplier typically approved by courts.

_____

[2] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

17

59. The Lodestar Report attached as Ex. A to the Pomerantz Decl. lists the amount of time spent by Pomerantz in the prosecution of this Action. The firms' time is taken from daily time records regularly prepared and maintained in the ordinary course of business.

60. The number of hours reasonably and necessarily spent by Pomerantz on this Action is 609.94. Pomerantz's hourly billing rates for the professionals working on this Action ranged from $335 to $1000. The hourly rates for attorneys and professional staff at Pomerantz are the usual and customary rates charged for each individual in non-contingent matters and conform to industry practice.

61. As set forth in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, a multiplier of 1.42 is lower than typical range of a fair and reasonable award.

### B. Costs and Expenses

62. The expenses incurred in the prosecution of this Action are set forth in Exhibit B to the Pomerantz Decl. ("Expense Summary"). In total, Lead Counsel has incurred $28,818.78 in expenses. The majority of these resulted from the work of experts engaged to help Lead Counsel prosecute this Action.

63. The Expense Summary lists the unreimbursed expenses that Lead Counsel reasonably and necessarily incurred in the prosecution of this Action.

64. These expenses are reasonable in light of the pace and duration of this Action and were necessarily incurred for its successful resolution.

## VI. AN AWARD TO THE PLAINTIFFS IS WARRANTED

65. The Notice advised Settlement Class Members that Plaintiffs would seek an award of no greater than $8,000.00 in total.

66.     Plaintiffs seek an award in the amount of $8,000.00; $5,000.00 for Lead Plaintiff and $3,000.00 for Plaintiff.  This award is justified in light of Plaintiffs' efforts and lost time overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement. In particular, Plaintiffs (a) communicated with Lead Counsel regarding the posture and progress of the case; (b) compiled their trading data and completed their certifications in connection with their motion to be appointed Plaintiffs; (c) reviewed all of the significant pleadings and pre-motion letters filed in the Action; (d) performed searches for documents; (e) consulted with Lead Counsel regarding the settlement negotiations and mediation; and (f) evaluated and approved the proposed Settlement.  *See* Declaration of Nancy Lin, dated September 17, 2021, in Support of Plaintiffs' Unopposed Motions for (I) Final Approval of Settlement Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, at ¶ 4, submitted as Ex. 3 hereto; and Declaration of Gilbert Lee Silverbird, September 18, 2021, in Support of Plaintiffs' Unopposed Motions for (I) Final Approval of Settlement Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs, at ¶ 4, submitted as Ex. 4 hereto.

67.     Given the important contributions and the time and effort expended by Plaintiffs, the requested awards are warranted and should be approved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 20, 2021

                                        */s/ Cara David*
                                        Cara David

19