UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY LIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY HEALTH SCIENCES INC., GEORGE SCORSIS, RENE GULLIVER, and VIC NEUFELD, <br><br> Defendants. | Case No. 1:19-cv-00161-MKV-SLC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>COMPENSATORY AWARD TO PLAINTIFFS</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    THE SETTLEMENT CLASS'S POSITIVE REACTION TO THE REQUESTS............. 3

III.   LEAD COUNSEL'S EFFORTS ON BEHALF OF THE SETTLEMENT CLASS .......... 4

IV.    LEAD COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE............................ 5

        A.    The *Goldberger* Factors Demonstrate That the Fee is Fair and Reasonable .......... 8

                1.    Lead Counsel Devoted Significant Time and Labor to Prosecute the Action...................................................................................................... 8

                2.    This High-Stakes Securities Litigation Was Complex and Risky ............. 8

                3.    The Quality of the Legal Representation Supports the Requested Fee .... 10

                4.    The Requested Fee in Relation to the Settlement is Fair and Reasonable ...................................................................................................... 12

                5.    Strong Public Policy Considerations Support the Fee Requested Here.... 14

        B.    The Lodestar/Multiplier Cross-Check Also Supports the Fee Request ................ 15

V.     LEAD COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION .......................................... 17

VI.    PLAINTIFFS' COMPENSATORY AWARD SHOULD BE PERMITTED .................. 19

VII.   CONCLUSION....................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................................2, 14

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) .......................................................................................10

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990);...........................................................................................10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)........................................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985).....................................................................................................2, 14

*Becher v. Long Island Lighting Co.*,
   64 F. Supp. 2d 174 (E.D.N.Y. 1999) .............................................................................13

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
   603 F.2d 263 (2d Cir. 1979)............................................................................................10

*Blum v. Stenson*,
   465 U.S. 886 (1984)........................................................................................................12

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..........................................................................................................5

*City of Detroit v. Grinnell*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger*,
   209 F.3d 43 ....................................................................................................................16

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub
   nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015)......................................6, 9, 12, 13

*Clark v. Ecolab Inc.*,
   No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................13

*Collins v. Olin Corp.*,
   No. 03-cv-945 (CFD), 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ....................................13

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...........................................................................17

*Elkin* v. *Walter Inv. Mgmt. Corp.*,
No. 17-cv-02025 (JCJ),  2018 WL 8951073  (E.D. Pa. Dec. 17, 2018) ...................................20

*Fleisher v. Phx. Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ...........................6, 7, 15

*Fogarazzo v. Lehman Bros.*,
No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...................................13

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)..................................................................................................7, 15

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)................................................................................1, 6, 7, 8, 10

*Hicks v. Morgan Stanley & Co.*,
2005 WL 2757792 (S.D.N.Y. Oct. 19, 2005)....................................................................15, 19

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...............................................................................................10

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 (LMM), 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
*aff'd,* 272 F. App'x 9 (2d Cir. 2008)........................................................................................11

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)..................................................................................17, 20

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ......................................................................................13

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*,
No. 01-258, 2003 WL 23335319 (D. Minn. June 16, 2003)....................................................14

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005)......................................................................................17

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F.
App'x 37 (2d Cir. 2016).............................................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 5, 2010)...........6, 8, 11, 18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................6, 18

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003)...................................................................18

*In re Initial Public Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................13

*In re Interpublic Sec. Litig.*,
No. 02-cv-6527 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ...................................17

*In re JDS Uniphase Corp. Securities Litigation*,
No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). ...........................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)................................20

*In re Med. X-Ray Film Antitrust Litig.*,
CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ......................................................14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ...........................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................18

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................8, 9, 16, 18, 20

*In re Monster Worldwide, Inc. Sec. Litig.*,
No. 07-cv-02237 (JSR), 2008 WL 9019514 (S.D.N.Y. Nov. 24, 2008) ...............................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ...................................................................17

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other
grounds,* 862 F.3d 250 (2d Cir. 2017) ...................................................................4

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................14

*In re Sturm, Ruger, & Co. Sec. Litig.*,
No. 3:09cv1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012).............................9, 12

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)..................................................................................17

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008).................................20

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) .....................................................................................14

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc v.*
    *Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .............................................................6

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).......................10, 11, 14

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..........................................................................6, 15, 17

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................................20

*Khait v. Whirlpool Corp.*,
    No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................13

*Kurzweil v. Philip Morris Cos.*,
    No. 94 Civ. 2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 24, 1999)..............................17

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)........................................................................................7, 15

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................2, 8, 13, 14, 17

*McKenzie Constr., Inc. v. Maynard*,
    758 F.2d 97 (3d Cir. 1985).................................................................................................10

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).....................................................................................................12, 15

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...............................13

*Park v. Thomson Corp.*,
    No. 05 Civ. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)...............................20

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .....................................................................................17

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999)..................................................................................7, 15

*Schuler v. Meds. Co.*,
No. 14-1149 (CCC), 2016 WL 3457218 (D. N.J. Jun. 23, 2016)...........................17

*See In re Veeco Instruments Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808  (S.D.N.Y. Nov. 7, 2007). ..............7

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 21, 2014)..................17

*Silverberg v. People's Bank*,
23 F. App'x 46 (2d Cir. 2001) ..............................................................................13

*Silverstein v. AllianceBernstein LP*,
No. 09-CV-5904 (JPO), 2013 WL 7122612 (S.D.N.Y. Dec. 20, 2013)..................12

*Stefaniak v. HSBC Bank USA, N.A.*,
No. 05-CV-720 S, 2008 WL 7630102  (W.D.N.Y. June 28, 2008)........................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................2, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. Jan 4, 2005); .................................................................6, 7, 17

**Statutes**

15 U.S.C. § 77z-1(a)(6)...............................................................................................7

15 U.S.C. § 78u-4(a)(4) .............................................................................................19

15 U.S.C. § 78u-4(a)(6) ...............................................................................................7

**Rules**

Fed. R. Civ. P. 23.........................................................................................................1

**Other Authorities**

Cornerstone Research, *Securities Settlement Class Action Settlements – 2018
Review and Analysis* (2019)................................................................................11

H.R. Rep. No. 104-369 (1995).....................................................................................19

S. Rep. No. 104-98 (1995)............................................................................................19

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Settlement Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019)...........................................10

## I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[1] Lead Plaintiff Nancy Lin and Plaintiff Gilbert Lee Silverbird (together, "Plaintiffs"), individually and on behalf of all Settlement Class Members, present for the Court's approval requests for (i) legal fees amounting to 33.333% of the Settlement Amount of 1.8 million U.S. dollars ($1,800,000) (or six hundred thousand U.S. dollars ($600,000)), plus interest, (ii) reimbursement of $28,818.78 in out-of-pocket litigation expenses, and (iii) an award to Lead Plaintiff Nancy Lin of five thousand U.S. dollars ($5,000) and Plaintiff Gilbert Lee Silverbird of three thousand U.S. dollars ($3,000) (or $8,000 cumulative).

The factors articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000), support the award of attorneys' fees amounting to 33.333%, *i.e.*, one-third, of the Settlement Amount because this award is fair and reasonable.  The result of Lead Counsel's efforts—under Plaintiffs' supervision—speaks for itself: despite facing a formidable legal defense, Lead Counsel secured a $1.8 million gross recovery for the Settlement Class, which, compared to the damage number formulated by Lead Plaintiffs' damages expert, represents an excellent result, returning approximately 8.3% of estimated damages.  The requested fee award is fair compensation for these exceptional efforts and is well-within the range of fees awarded by courts within the Second Circuit and this District.[2]

As described more fully below, Lead Counsel is requesting a 33.333% fee, as specified in the mailed Notice of Proposed Settlement of Settlement Class Action and Proof of Claim and

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation of Settlement, dated January 8, 2021 (ECF No. 84-1) ("Stipulation").  "ECF No." references herein are to the *Lin v. Liberty Health Sciences, Inc. et al:* 1:19-cv-00161-MKV-SLC (S.D.N.Y.) docket.

[2] *See infra* Section IV.A.4.

Release Form (the "Notice Packet"). Lead Counsel's diligence and substantial efforts during the almost three years that the above-captioned action ("Action") has been pending generated a total lodestar value of $422,299.00, the 1.42 multiplier of which, if the Court were to award the requested fees, is lower than those awarded in courts throughout the country. The complexity and risks of this high-stakes securities-fraud Settlement Class action, which Lead Counsel undertook on a contingency-fee basis, also amply support the requested fee.

The $28,818.78 in expenses incurred were reasonable and necessary to prosecute the Action. This amount is lower than the $35,000 figure that was reported to Settlement Class Members in the mailed Notice Packet as the potential amount of expenses.

In addition, the attentiveness, active involvement, and care with which Plaintiffs performed their duties, the tasks that they performed, the manner in which they monitored the Action, and their oversight of the settlement process all justify the relatively modest request of an $8,000.00 total compensatory award to them for their time and service to the Settlement Class.

The services of Plaintiffs and Lead Counsel exemplify the considerations that the Supreme Court has articulated in emphasizing the strong policy for encouraging private securities-fraud Settlement Class actions. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). The strong policy supporting private enforcement of securities laws through fair and reasonable fee awards, such as that requested here, has also been emphasized by courts in this District. *See, e.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to

2

prosecute Settlement Class actions on a contingent basis pursuant to the federal securities laws on behalf of those who otherwise could not afford to prosecute.").[3]

The fairness and reasonableness of Plaintiffs' and Lead Counsel's requests, to date, is supported by the fact that *zero* objections or requests for exclusion have been received from potential Settlement Class Members, despite 20,337 Notices being mailed to potential Settlement Class Members, brokers and nominee holders (and one nominee stating they alerted an additional 17,182 of their customers).

In light of all these considerations, particularly the favorable reaction of the Settlement Class, Lead Plaintiffs respectfully submit that these requests should be approved.

## II.   THE SETTLEMENT CLASS'S POSITIVE REACTION TO THE REQUESTS

The Claims Administrator published the Summary Notice of Pendency and Proposed Settlement of Settlement Class Action and Final Approval Hearing ("Summary Notice") over the *GlobeNewswire* on August 12, 2021, and mailed 20,337 Notices worldwide. (*See* Declaration of Cara David in Support of Lead Plaintiffs' (1) Unopposed Motion for Final Approval of Settlement Class Action Settlement and Plan of Allocation of Settlement Proceeds and (2) Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Plaintiffs ("David Decl."), Ex. 1 (Declaration of Josephine Bravata Concerning: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.")) ¶¶ 7, 9 and Ex. C.) Notably, the mailed Notice stated that Lead Counsel could seek up to 33.333% of the Settlement fund, up to $35,000 in litigation expenses (more than is actually being sought), and up to $8,000 as an incentive award to Plaintiffs. (*See id.*, Ex. A (Notice Packet) at 2.) Despite these robust

_____

[3] All internal citations and quotations are omitted herein, unless stated otherwise.

notice efforts, to date, *zero* Settlement Class Members have objected or requested exclusion.  (*Id.* ¶¶ 12-13.)

## III.    LEAD COUNSEL'S EFFORTS ON BEHALF OF THE SETTLEMENT CLASS

Lead Counsel Pomerantz LLP ("Pomerantz," or the "Firm"), Pomerantz is a nationally-recognized Settlement Class-action firm with extensive experience litigating and negotiating settlements as lead or co-Counsel in complex securities Settlement Class actions.  (*See* David Decl., ¶ 57, Ex. 2, ¶ 7, Ex. C).  Pomerantz has been appointed lead or co-lead counsel in many complex securities Settlement Class actions and has recovered substantial sums for clients and Settlement Class members.  *Id.*  Pomerantz has prosecuted hundreds of such cases to successful resolution in its 80-year history and obtained billions of dollars in compensation for Settlement Class members.  *Id.*  Courts routinely acknowledge Pomerantz's securities litigation strengths. *See, e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) ("[O]n the basis not only of [the Firm's] prior experience but also the Court's observation of its advocacy over the many months since it was appointed lead counsel, the Court concludes that Pomerantz, the proposed Settlement Class counsel, is qualified, experienced and able to conduct the litigation."), *aff'd in part, vacated in part on other grounds,* 862 F.3d 250 (2d Cir. 2017).

As Lead Counsel, Pomerantz was responsible for the conduct and oversight of this Action, which it zealously prosecuted on behalf of Plaintiffs and the Settlement Class.[4]  *See* David Decl., ¶ 56.    Pomerantz led all aspects of strategic analysis and case investigation, including, *inter alia*, its:

  a.    Preparing briefing in connection with the motion for appointment of lead plaintiff;

---

[4] Plaintiffs incorporate by reference the fuller background statement provided in Plaintiffs' Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, filed contemporaneously herewith ("Final Approval Brief").

b. Retaining and working with investigators to locate and interview numerous confidential witnesses;

c. Reviewing and analyzing Liberty's Settlement Class Period and pre- and post-Settlement Class Period SEC and SEDAR filings, annual reports, press releases, investment conference transcripts, and other public statements;

d. Thoroughly researching the securities laws and intricacies of Liberty's business and place in an intertwined network of companies;

e. Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

f. Opposing the multiple Motions to Dismiss filed by Defendants, which raised and evaluated numerous complex issues specific to the Action;

g. Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and worked with the Claims Administrator to effectuate notice and oversee the administration process;

h. Securing the services of the Escrow Agent;

i. Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement (including detailed supplemental briefing) and provide notice of the Settlement to Settlement Class Members; and

j. Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

*Id.*

Lead Counsel will also participate in the final-approval hearing on the Settlement and will continue to oversee administration of the Settlement.

## IV.    LEAD COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The rationale . . . is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost."

*Goldberger*, 209 F.3d at 47.  In addition to providing just compensation, awards of fair attorneys' fees from a common fund encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future misconduct of a similar nature.  *See, e.g.*, *id.* at 51 ("There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *23 (S.D.N.Y. Nov. 5, 2010) (finding fee awards "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "discourage future misconduct of a similar nature").

The Second Circuit approves two ways to determine a fair and reasonable attorney's fee in common fund cases: the "percentage-of-recovery" and "lodestar/multiplier" methods. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 121 (2d. Cir. Jan 4, 2005); *Goldberger*, 209 F.3d at 50.  Under the percentage-of-recovery approach, which is preferred in this District,[5]

---

[5] *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) ("[I]n this District the great weight of authority supports basing common-fund awards on a percentage of the gross recovery."); *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 (CM),  2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015) (collecting cases); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  Moreover, the plain language of the Private Securities Litigation Reform Act of 1995 ("PSLRA") states that class

the Court sets some percentage of the gross recovery as a fee. *See In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007). The Second Circuit has explained that "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the Settlement Class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 122. Under the lodestar method, a court first determines the lodestar (number of hours spent multiplied by appropriate current hourly rates), and then, if warranted, upwardly adjusts that number (awards a multiplier) to account for several factors, including the assumed by the lawyers and the extent of their success. *See Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d risks Cir. 1999). Current hourly rates in place at the time of the fee application are used "within the Second Circuit as a means of accounting for the delay in payment inherent in Settlement Class actions and for inflation." *Fleisher*, 2015 WL 10847814, at *18 and n.14 (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

In *Goldberger*, the Second Circuit identified factors for courts to consider in evaluating fee requests, including the (1) time and labor expended by counsel; (2) magnitude, complexity, and risks of the litigation; (3) quality of representation; (4) requested fee in relation to the settlement; and (5) public policy considerations. 209 F.3d at 50. An analysis of these factors demonstrates that the fee request here is both reasonable and fair. Through Lead Counsel's diligence and substantial efforts during the approximately two years that this Action has been pending, under Plaintiffs' supervision, the Settlement Class obtained a substantial recovery.

---

counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6); 15 U.S.C. § 77z-1(a)(6).

7

Lead Counsel thus respectfully requests that the Court grant its request for a 33.333% fee, which is fair and reasonable under both the percentage-of-recovery and lodestar/multiplier methods. Lead Counsel intends to share part of any attorneys' fees awarded by the Court with other counsel in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action, as provided for in Paragraph 7.2 of the Stipulation.

### A.   The *Goldberger* Factors Demonstrate That the Fee is Fair and Reasonable

#### 1.   Lead Counsel Devoted Significant Time and Labor to Prosecute the Action

As discussed in greater detail in § IV.B., *infra*, Lead Counsel devoted significant time and labor to prosecute the Action, performing the multitude of tasks outlined in § III., *supra*. As of the date of the filing of this motion, and excluding all work done in support of the fee application, Lead Counsel reasonably expended 609.94 total hours in prosecuting this Action, with nearly all of that total expended personally by Lead Counsel, for a total lodestar value of $422,299.00 at current billing rates normally charged for comparable litigation work. (*See* David Decl., Ex. 2, ¶ 4, Ex. A (Lodestar Report)).

#### 2.   This High-Stakes Securities Litigation Was Complex and Risky

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award. *Goldberger*, 209 F.3d at 54. "Little about litigation is risk-free, and Settlement Class actions confront even more substantial risks than other forms of litigation." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010). Courts have repeatedly recognized that "[s]ecurities Settlement Class actions such as this are notably difficult and notoriously uncertain." *Flag*, 2010 WL 4537550, at *15; *see also Maley*, 186 F. Supp. 2d at 372 (finding "[a] securities case such as this one, by its very nature, is a complex animal" because, *inter alia*, "plaintiffs faced substantial factual and legal

8

hurdles in establishing their core allegations" and "faced issues on causation and damages"); *In re Sturm, Ruger, & Co. Sec. Litig.*, No. 3:09cv1293 (VLB), 2012 WL 3589610, at *12 (D. Conn. Aug. 20, 2012) ("Had this case proceeded to trial, additional discovery and motion practice including motion of summary judgment would have doubtless prolonged and delayed the resolution of this case. . . . Plaintiffs face substantial factual and legal hurdles to establish that Defendants made material misstatements and omissions[.]").  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the [PLSRA]," *MetLife*, 689 F. Supp. 2d at 361, and by their nature, are complex and difficult, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 173 (S.D.N.Y. 2007).

As discussed more fully in Sections IV.B.1. and IV.B.4. of Plaintiffs' Final Approval Brief, this securities-fraud class action—which went through comprehensive motion to dismiss briefing—fits the bill of complexity and risk regularly recognized by courts.  This factor supports the fairness and reasonableness of the fee.  *See Aéropostale*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities Settlement Class action such as this supports the fee request."); *Sturm*, 2012 WL 3589610, at *12 (finding that litigation risk supported approval of attorneys' fees because attorneys took on securities Settlement Class action on a contingent basis and there were risks for establishing liability and proving damages, such as challenges to falsity, materiality, and scienter).

Lead Counsel made a substantial outlay of both time and money, all while facing the very real risk of recovering nothing.[6]

---

[6] Even if the Complaint survived the pending motions to dismiss, Plaintiffs still would have had to tackle class certification and litigate against Defendants' near-certain motions for summary judgment.  Therefore, substantial risks would still persist, given that many securities cases have been lost at trial, on post-trial motions, or on appeal.  For example, in *In re JDS Uniphase Corp.*

### 3.    The Quality of the Legal Representation Supports the Requested Fee

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). "[T]he quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985).

Despite substantial hurdles, including hotly contested motions to dismiss, Lead Counsel obtained a $1.8 million gross recovery for the Settlement Class. Compared to the damages number formulated by Lead Plaintiffs' damages consultant, this represents a very favorable result, returning approximately 8.3% of estimated damages. David Decl. ¶ 29. According to preeminent studies of securities-fraud Settlement Class-action settlements, this recovery is well above the median recovery. *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Settlement Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) ("NERA Report"), at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value in

---

*Securities Litigation*, the jury issued a verdict in favor of defendants after five years of litigation. No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. 688 F.3d 713 (11th Cir. 2012). In *Backman v. Polaroid Corp.*, the class won a $38 million jury verdict, and a motion for judgment *n.o.v.* was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. 910 F.2d 10 (1st Cir. 1990); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

securities Settlement Class actions in 2018 was just 2.6% of estimated damages, and for cases between 1996-2018 with NERA-defined investor losses between $100-199 million was only 3.1%);[7] Cornerstone Research, *Securities Settlement Class Action Settlements – 2018 Review and Analysis* (2019) ("Cornerstone Report"), at 6 (Fig. 5) (showing that between 2009-2017, the median settlement in securities Settlement Class actions with simplified tiered damages ranging between $75-149 million and $150-249 million was approximately 5% and 4%, respectively; the median settlement in 2018 for these ranges was approximately 4.9% and 9.4%, respectively; between 2009-2017, the median settlement was approximately 5.1% of simplified tiered damages for all securities Settlement Class actions; and, in 2018, the median settlement was approximately 6% for all securities Settlement Class actions); *see also* Final Approval Brief, Section IV.7.

Additionally, the quality of Lead Counsel's performance is further evidenced by the fact that the Settlement was secured in the face of formidable opposing counsel, including three large defense firms, which staffed this case with top-flight legal talent. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd,* 272 F. App'x 9 (2d Cir. 2008); *Flag*, 2010 WL 4537550, at *28; *Warner Commc'ns*, 618 F. Supp. at 749.

Ultimately, Lead Counsel's skillful and diligent efforts investigating the claims in the Complaint and pursuing those claims throughout the litigation process enabled Plaintiffs to

---

[7] *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_ 012819_Final.pdf.

obtain a settlement of this size and supports the requested fee. *See Aéropostale*, 462014 WL 1883494, at \*16-17 (finding quality of firm specializing in complex litigation and securities Settlement Class actions, which secured a substantial, immediate cash recovery in the face of formidable opposing counsel in a challenging case supported the requested fee); *Sturm*, 2012 WL 3589610, at \*13 (finding that quality of representation and size of the settlement, 3.5% of plaintiff's maximum estimate of provable damages, supported approval of the fee).

The positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation. Not a single potential Settlement Class Member has objected to the Settlement or the request for an award of attorney's fees or reimbursement of expenses or requested exclusion from the Settlement Class. Bravata Decl. ¶¶ 12-13; *see also Silverstein v. AllianceBernstein LP*, No. 09-CV-5904 (JPO), 2013 WL 7122612, at \*9 (S.D.N.Y. Dec. 20, 2013) ("No Settlement Class Member objected to Settlement Class Counsel's request for 33 1/3% of the fund, which also provides support for Settlement Class Counsel's fee request."). That such a positive reaction followed the mailing of tens of thousands of Notices constitutes powerful support for the requested awards.

### 4. The Requested Fee in Relation to the Settlement is Fair and Reasonable

In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903\* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

Indeed, courts within this District have routinely awarded legal fees amounting to approximately one-third of settlement funds. *See, e.g.*, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at \*11 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *Aéropostale*, 2014 WL 1883494, at \*20 (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (approving 33% fee); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at \*3-4 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at \*8-10 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of $6 million settlement); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of over $510 million); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at \*5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding one-third of settlement and finding "Settlement Class Counsel's request for 33% of the Settlement Fund is typical in Settlement Class action settlements in the Second Circuit"); *Maley*, 186 F. Supp. 2d at 370-74 (awarding 33 1/3% of settlement fund valued at over $11.5 million);[8]

---

[8] The same is true in other courts. *See, e.g.*, *Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at \*8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182-183 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 S, 2008 WL 7630102, at \*3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 03-cv-945 (CFD), 2010 WL 1677764, at \*6 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT (RCx), 2005 WL 1594403, at \*19 (C.D. Cal. June 10, 2005) (awarding 33.3% of $27.78 million settlement); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awarding 33.3% of $7 million settlement);

### 5.    Strong Public Policy Considerations Support the Fee Requested Here

"Congress, the Executive Branch, and [the Supreme] Court . . . have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Amgen*, 568 U.S. at 478 (quoting *Tellabs*, 551 U.S. at 313); *see also Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[9]

Courts in this District recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud Settlement Class actions. For example, as the court in *Hicks v. Morgan Stanley & Co.* explained:

---

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258 (JNE/JGL), 2003 WL 23335319, at *3 (D. Minn. June 16, 2003) (awarding 33.3% of $20 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from less than $1 million to $50 million, "the median [fee] turns out to be one-third"); *In re Med. X-Ray Film Antitrust Litig.*, CV-93-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3 % of a roughly $40 million settlement fund as "well within the range accepted by courts in this circuit").

[9] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Warner Commc'ns,* 618 F. Supp. at 750-51 (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance").

14

Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices. Such actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the Settlement Class. Due to the dispersed, and relatively small, losses among a large pool of investors, the Settlement Class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action. To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts.

No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 19, 2005); *see also WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."). This factor therefore also weighs in favor of the Settlement.

### B.    The Lodestar/Multiplier Cross-Check Also Supports the Fee Request

To arrive at the lodestar, hours expended are multiplied by each attorney's respective hourly rate, as long as the rate is reasonable. *See Savoie*, 166 F.3d at 460. It is well-settled that the use of an attorney's current rate in place at the time of the fee application is proper, since such rates compensate for inflation, the loss of use of funds, and the delay in receiving payment. *See, e.g.*, *Fleisher*, 2015 WL 10847814, at *18; *Gierlinger*, 160 F.3d at 882; *LeBlancSternberg*, 143 F.3d at 764; *Jenkins*, 491 U.S. at 283-84.

As detailed in Section III above, Lead Counsel expended significant time and resources to prosecute this Action to the point of Settlement. As of September 20, 2021, Lead Counsel have altogether reasonably expended 609.94 total hours in prosecuting this Action—excluding hours spent preparing this fee application—for a total lodestar of $422,299.00 at current billing

15

rates normally charged for comparable litigation work.[10] (*See* David Decl., Ex. 2, ¶ 4, Ex. A (Lodestar Summary)).   These lodestar figures are based on hourly records created and maintained in the records of the Firm in the ordinary course of business, which upon the Court's request, can be submitted for *in camera* review (so as to protect confidentiality, privilege, or work product protection).

Lead Counsel is seeking only a 1.42 multiplier of the time it has billed thus far, which is calculated by dividing the requested fee of $600,000.00 (33.333% of $1,800,000.00) by the lodestar value of $422,299.00.  Lead Counsel worked on a wholly contingent-fee basis and has not received any compensation or reimbursements for its large expenditures of attorney and paralegal time or its significant cash outlays since this litigation began almost three years ago. As the Second Circuit has recognized, the risk of no compensation to lawyers who work on a contingency-fee arrangement is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d 43; *see also MetLife*, 689 F. Supp. 2d at 361-62 (finding that the significant litigation risks supported the fee request, and stating that "[f]rom the outset, these actions were difficult, with no assurance that counsel would see any compensation for the time and resources they expended on behalf of the Settlement Classes").

---

[10] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

Much higher multipliers are often awarded in securities-fraud Settlement Class actions or similar complex litigations in this Circuit. *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (affirming multiplier of 3.5 as reasonable); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (awarding multiplier of 5.2 where "Defendants withdrew their motion to dismiss as the parties began to engage in mediation"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 447-8 (E.D.N.Y. 2014) (multiplier of 3.41 for $544.8 million in fees); *Maley*, 186 F. Supp. 2d at 370-71 (awarding multiplier of 4.65 and one-third of $11.5 million settlement while motions to dismiss were pending); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 WL 3457218, at \*10-11 (D. N.J. Jun. 23, 2016) (awarding 33% of $4.25 million settlement, representing a 3.57 multiplier, where settlement was reached while motion to dismiss was pending); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 before any formal discovery); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (noting that multiplier of 5.3 was "not atypical for similar fee-award cases"); *WorldCom*, 388 F. Supp. 2d at 354-59 (multiplier of 4.0); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").[11]

## V.   LEAD COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION

Lead Counsel also requests the reimbursement of $28,818.78 in expenses reasonably and necessarily incurred while prosecuting this Action.   (*See* David Decl., Ex. 2, ¶ 5, Ex. B

---

[11] *See also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM), 2014 WL 1224666, at \*24 (S.D.N.Y. Mar. 21, 2014) (multiplier of 3.05); *In re Interpublic Sec. Litig.*, No. 02-cv-6527 (DLC), 2004 WL 2397190, at \*12 (S.D.N.Y. Oct. 26, 2004) (multiplier of 3.96); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at \*3 (S.D.N.Y. Nov. 24, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

(Expenses Summary)); *see also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 143 (S.D.N.Y. 2008) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (finding courts may compensate Settlement Class counsel for reasonable out-of-pocket expenses necessary for the representation of the Settlement Class); *Flag*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a Settlement Class.").

Lead Counsel's supporting declaration attests to the accuracy of these expenses. (*See* David Decl., Ex. 2, ¶ 5, Ex. B (Expenses Summary)). Because the expenses were incurred with no guarantee of recovery, counsel had a strong incentive to keep them at a reasonable level, and they did so. Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible. *See, e.g.*, *MetLife*, 689 F. Supp. 2d at 364 (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

Notably, the requested expenses reimbursement is lower than the expense figure of $35,000.00 that was described in the Notice. *See* Bravata Decl., Ex. A (Notice Packet), at 2, which generated *zero* objections or requests for exclusion from the Settlement Class. The

18

Settlement Class has spoken, and it deemed an even higher amount of expenses than the figure currently sought to be reasonable under the circumstances.

The expenses incurred in the prosecution of this Action do not include the expenses of the Claims Administrator incurred for work done in providing Court-ordered Notice of the Settlement and administering the claims process. As set forth in the Stipulation, and pursuant to Paragraph 24 of the Preliminary Approval Order, those costs are being paid, after review and approval by Lead Counsel, from the Notice Administration Fund.

## VI.    PLAINTIFFS' COMPENSATORY AWARD SHOULD BE PERMITTED

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the Settlement Class . . ." 15 U.S.C. § 78u-4(a)(4); *see also Hicks*, 2005 WL 2757792, at *10 ("Courts in [the Second] Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages[.]"). Congress, in fact, intended to grant courts discretion to grant awards in appropriate cases. *See* H.R. Rep. No. 104-369, at 6 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for reasonable costs and expenses (including lost wages) directly relating to representation of the Settlement Class.").

Plaintiffs' declarations, filed concurrently with this brief, as confirmed by the declaration of Lead Counsel, attest to the attentiveness, active involvement, and care with which Plaintiffs performed their duties, the tasks that they each performed, the manner in which they each monitored the Action, their oversight of the settlement process, and their time expended

19

performing these roles.  (David Decl., Exs. 3 and 4, ¶ 4.)  Lead Counsel therefore respectfully submits that the relatively modest request of $5,000 for Lead Plaintiff Lin and $3,000 for Plaintiff Silverbird to compensate them for their time and service to the Settlement Class is reasonable, especially when compared to the lead plaintiffs' awards routinely granted by courts. *See Elkin* v. *Walter Inv. Mgmt. Corp.*, No. 17-cv-02025 (JCJ),  2018 WL 8951073, at *2 (E.D.Pa., Dec. 17, 2018) (awarding lead plaintiff $10,000 in case that settled while motion to dismiss was pending); *Colgate-Palmolive*, 36 F. Supp. 3d at 354 (awarding six plaintiffs $5,000 each, for total plaintiff award of $30,000, while motion to dismiss was pending); *Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *7 (S.D.N.Y. Oct. 22, 2008) (awarding $5,000); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-02237 (JSR), 2008 WL 9019514, at *2 (S.D.N.Y. Nov. 24, 2008) (awarding $7,303.08 for reasonable costs and expenses directly relating to the representation of the Settlement Class); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to eight lead plaintiffs for services rendered to the Settlement Class).

A plaintiff's "reasonable costs and expenses incurred in managing [the] litigation and representing the Settlement Class"—as requested by Plaintiffs here—results from "precisely the types of activit[y] that support[s]" compensatory awards to Settlement Class representatives.  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *1 n.1, 21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs).  Plaintiffs' requested award is also appropriate in light of their relationship to "the amounts recovered by absent Settlement Class members under the settlement."  *Metlife*, 689 F. Supp. 2d at 370; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 WL 2944620, at *1, 18 (S.D.N.Y. July 31, 2008) ($3,000 award from $1.2 million settlement).

20

## VII.   CONCLUSION

For all the reasons described above, Plaintiffs and Lead Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of 33.333% of the gross Settlement fund, *i.e.*, $600,000, plus interest; (b) approve reimbursement of $28,818.78 in aggregate expenses; and (c) grant awards to Lead Plaintiff Lin in the amount of $5,000 and Plaintiff Silverbird in the amount of $3,000 ($8,000 total).

Dated:  September 20, 2021

**POMERANTZ LLP**

*/s/Cara David*
Jeremy A. Lieberman
Cara David
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
         cdavid@pomlaw.com

*Lead Counsel for Plaintiffs*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

>_/s/ Cara David_
>Cara David

22